OPINION OF THE COURT
Edward F. McLaughlin, J.
This is a habeas corpus proceeding initiated by the petitioner pursuant to CPLR article 70 on January 11, 1979, and argued on January 18, 1979. At issue is the constitutionality of newly enacted subdivision 9 of section 402 of the Correction Law which provides an emergency procedure for a temporary administrative transfer of certain allegedly mentally ill prisoners from a correctional facility to the Central New York Psychiatric Center, without prior judicial determination of such mental illness.
Prior to the commitment now at issue, petitioner was an inmate of the Green Haven Correctional Facility in Storm-ville, New York. On or about June 13, 1978, petitioner was transferred to Central New York Psychiatric Center for treatment of an "acute psychotic episode,” and two months thereafter was returned to prison in an improved condition.
On December 7, 1978, the Superintendent of Green Haven applied for petitioner’s readmission to Central New York Psychiatric Center on an emergency basis pursuant to subdivision 9 of section 402 of the Correction Law. This application was based on petitioner’s aberrant behavior of the preceding few weeks as particularized by the superintendent’s supporting statement, including an unexplained and unprovoked physical assault on a correction officer and petitioner’s bizarre conduct in his cell. Petitioner was examined by Doctors A. Cakir and K. Chiakiert, physicians employed by the Office of Mental Health and associated with Green Haven. Their examinations found petitioner to be extremely hostile, agitated, disturbed and neglectful of personal hygiene. The physicians concurred in a diagnosis of "acute schizophrenic episode,” and were of the opinion that petitioner’s mental illness was likely to result in serious harm to himself or others. It was concluded that there was no possible way to treat him at Green Haven, and that he should be admitted to Central New York Psychiatric Center immediátely. Accordingly, petitioner was transferred to said hospital on December 7, 1978, on an emergency basis pursuant to subdivision 9 of section 402 of the Correction Law.
*1118 Section 402 of the Correction Law, commencing at subdivision 1 sets forth the requisite procedure for commitment of mentally ill inmates. Upon receiving a report from the prison physician that an inmate is mentally ill, the superintendent applies for a court order to have the inmate examined by two additional physicians designated by the court. Upon a finding by these physicians that the inmate is mentally ill and in need of care and treatment, a certificate to that effect is delivered to the superintendent, who thereupon petitions the court for an order of commitment.
Subdivisions 3, 4 and 5 of section 402 provide the inmate with due process protections of notice and a hearing prior to judicial determination of his mental condition. If the court finds that the inmate is mentally ill and in need of care and treatment, the court may issue an order of commitment to a Department of Mental Hygiene hospital for a period not to exceed six months.
The statute, in subdivision 8, further provides that during the pendency of the proceeding the Judge may commit the allegedly mentally ill person to an appropriate hospital upon petition and affidavit of two examining physicians that the superintendent is not able to properly care for such person at the institution where he is confined, and that such person is in immediate need of care and treatment.
Subdivision 9 of section 402, which is presently under constitutional attack, provides as follows: "Except as provided in subdivision two pertaining to prisoners confined in the city of New York, an inmate of a correctional facility or a county jail may be admitted on an emergency basis to the Central New York Psychiatric Center upon the certification by two examining physicians, including physicians employed by the office of mental health and associated with the correctional facility in which such inmate is confined, that the inmate suffers from a mental illness which is likely to result in serious harm to himself or others as defined in subdivision (a) of section 9.39 of the mental hygiene law. Any person so committed shall be delivered to the director of the appropriate hospital as designated in the rules and regulations of the office of mental health. Upon delivery of such person to a hospital operated by the office of mental health, a proceeding under this section shall immediately be commenced.”
Section 9.39 of the Mental Hygiene Law insofar as is applicable to its reference in subdivision 9 of section 402 of the *1119 Correction Law, provides for emergency admission of allegedly mentally ill persons to a Department of Mental Hygiene hospital. The director of the hospital may receive and retain such person allegedly having a mental illness for which immediate observation, care and treatment is appropriate and which is likely to result in serious harm to himself or others. "Likelihood to result in serious harm” as used in section 9.39 means:
"(1) substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or
"(2) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.”
Upon commitment, such person is entitled to a court hearing within five days to determine the need for involuntary care and treatment. This procedure was held constitutional in Fhagen v Miller (36 AD2d 926, affd 29 NY2d 348, cert den 409 US 845).
Petitioner contends that subdivision 9 of section 402 of the Correction Law is violative of due process and inconsistent with that section’s other subdivisions, as outlined above, in that subdivision 9 allows transfer of an inmate without prior court approval and without examination by "outside” physicians.
Petitioner distinguishes the Correction Law’s postcommitment hearing and examinations from those upheld in civil commitments under the Mental Hygiene Law, contending that an inmate is incarcerated even before transfer and is thus no threat to the general public. Petitioner does not address the remaining question of the likelihood of harm to the mentally ill inmate himself. In support of his contentions, petitioner cites a decision of the Supreme Court, Oneida County (Tenney, J.), dated September 8, 1978, which held subdivision 9 of section 402 of the Correction Law to be unconstitutional. (Matter of Lindner, 96 Misc 2d 234.)
It is a fundamental rule that a strong presumption exists in favor of the constitutionality of a legislative enactment. (Wiggins v Town of Somers, 4 NY2d 215; Lighthouse Shores v Town of Islip, 41 NY2d 7.) While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt (Defiance Milk Prods. Co. v Du Mond, 309 NY
*1120 537), and only as a last resort should courts strike down legislation on the ground of unconstitutionality. (Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, affd 344 US 367.) The legislation must be reasonably related to some manifest evil, which, however, need only be reasonably apprehended. (Matter of Stubbe v Adamson, 220 NY 459.) It is also presumed that the legislative body has investigated and found the existence of a situation indicating the need for the legislation. (Lighthouse Shores v Town of Islip, supra.)
According to a 1978 Governor’s Program Bill Memorandum in support of the subdivision 9 amendment to section 402 of the Correction Law, Department of Mental Hygiene psychiatrists have previously been frustrated in their attempts to quickly commit mentally ill inmates who conduct themselves in a manner that is likely to result in harm to themselves or others. Employment of the procedures set forth in section 402 of the Correction Law has resulted in a four- to eight-week delay in commitment from the time of application to the actual transfer of an inmate to a Department of Mental Hygiene hospital. The purpose of the amendment, according to the memorandum, is to correct this problem by allowing for the immediate commitment of such inmates while at the same time assuring the inmate his due process rights to notice, a hearing, and judicial review by commencement of a section 402 proceeding.
Although contending that subdivision 9 of section 402 is unconstitutional, petitioner concedes that the Superintendent of Green Haven complied with all requisite procedures set forth in that provision. Upon delivery of petitioner to Central New York Psychiatric Center, a section 402 proceeding was immediately commenced on December 7, 1978. The superintendent applied for an examination of petitioner by two examining physicians, but Supreme Court, Oneida County (Tenney, J.), declined to sign the order on the basis of his holding in Matter of Lindner (supra). The sole issue, then, is whether due process requires a prior judicial determination of mental illness before an allegedly harmful inmate can be transferred from prison to a psychiatric hospital pursuant to subdivision 9 of section 402 of the Correction Law, notwithstanding a guarantee of full posttransfer procedural safeguards.
In Fhagen v Miller (29 NY2d 348, supra) the Court of Appeals upheld the constitutionality of section 78 of the *1121 Mental Hygiene Law, from which the present section 9.39 is substantially derived. As noted above, subdivision (a) of section 9.39 of the Mental Hygiene Law provides for emergency admission of a private citizen to a mental hospital and retention therein for a period of up to 15 days upon an allegation that such person has a "mental illness * * * which is likely to result in serious harm to himself or others.” Judicial intervention in such a commitment occurs only subsequent to the confinement.
The court in Fhagen stated (p 353): "Due process does, ordinarily, demand reasonable notice and an opportunity to be heard in advance of confinement or restraint. However, as we declared in Matter of Coates, (9 N Y 2d 242, 249), 'where immediate action is necessary for the protection of society and for the welfare of the allegedly mentally ill person, [it] does not require notice or hearing as a condition precedent to valid temporary confinement.’ ”
The court concluded (p 354): "Moreover, since due process is not a concept to be rigidly applied, it is not offended if notice and a hearing follow confinement of a mental patient in an urgent case, as long as he is given the opportunity, within a short time, to litigate the question of his mental illness.”
The court’s holding in Fhagen is directly applicable to the present case. Where immediate action is necessary for the protection of others, be they fellow inmates or correction officers, or for the welfare of the allegedly mentally ill inmate himself, due process does not require notice or hearing as a condition precedent to valid temporary transfer of the inmate to a psychiatric hospital. Moreover, the court may not sit as a super-Legislature to consider the need for advisability for such transfers, for this is the duty of the Legislature alone, whose considered judgment will not be reviewed by the courts. (Lighthouse Shores v Town of Islip, 41 NY2d 7, supra.)
Petitioner must be afforded "substantially the same” procedural safeguards as those afforded in civil commitment proceedings. (United States ex rel. Schuster v Herold, 410 F2d 1071, cert den 396 US 847.) Having set forth certain requisite procedures for commitment of allegedly mentally ill inmates, the Legislature was within its authority to amend these procedures, within constitutionally proscribed limits, to afford quicker accessibility of treatment in an emergency situation to that class of inmates that requires it, as well as more effective protection to persons around them. As determined above, the *1122 amendment does not violate due process guarantees. Thus, subdivisions 1 and 9 of section 402 are not inconsistent.
Finally it is noted that an inmate, unlike a citizen committed under the Mental Health Law, is not deprived of his freedom in a significant way by transfer to a hospital. In People ex rel. Morriale v Branham (291 NY 312), the court in commenting on former section 440 of the Correction Law, which provided for judicial retention of a prisoner confined in a State institution for defective delinquents after expiration of his sentence, stated (p 318): "That section applies only where a prisoner has been sentenced after trial to a term of imprisonment in a penal or correctional institution, and is thereafter transferred in accordance with section 438-a or 439, by an administrative order to an institution for defective delinquents without any prior judicial ñnding of the fact of mental defectiveness. The place where a prisoner sentenced to imprisonment shall be confined during the term of his imprisonment may, under the statute, be determined by an administrative officer without notice or hearing, and such determination does not violate any constitutional right of the prisoner.”
For the reasons stated above, subdivision 9 of section 402 of the Correction Law is held to be constitutional and adequately protective of petitioner’s due process rights. Accordingly, petitioner’s application for release from Central New York Psychiatric Center on these grounds is denied, and the petition is dismissed.