■ In the Matter of DAVID LINDNER et al.—Order reversed and application granted, without costs. Memorandum: We find no unconstitutionality in the provisions of subdivision 9 of section 402 of the Correction Law; and Special Term erred in denying the applications for the appointment of two physicians for the mental examinations of David Lindner and John Cesario in accordance with that subdivision (see *Fhagen v Miller,* 29 NY2d 348, 353-354). We agree with and adopt the opinion of Mr. Justice Edward F. McLaughlin in *People ex rel. Overton v Director of Cent. N. Y. Psychiatric Center* (99 Misc 2d 1116). The matters of the constitutionality of the other provisions in section 402 of the Correction Law were neither briefed nor argued, and we do not reach them. All concur, except Schnepp, J., who dissents and votes to affirm the order, in the following memorandum.

Schnepp, J. (dissenting). The question framed for resolution on this appeal is whether adequate constitutional safeguards are provided by subdivision 9 of section 402 of the Correction Law, which outlines the emergency commitment procedure for transferring allegedly mentally ill prison inmates to a psychiatric center. David Lindner and John Cesario, inmates at the Elmira Correctional Facility, were transferred by appellant William S. Kirk, Acting Superintendent of the Elmira Correctional Facility, to the Central New York Psychiatric Center pursuant to the provisions of subdivision 9. Under this subdivision an emergency transfer of an allegedly mentally ill prisoner is permitted upon the certification of two examining physicians that the inmate suffers from a mental illness which is likely to result in serious harm to himself or others (as defined in the Mental Hygiene Law) without a prior judicial hearing. Upon delivery of the inmate to the hospital, proceedings utilized for nonemergency transfers must "immediately be commenced" (Correction Law, § 402, subd 9). The ordinary transfer procedure requires that prior to the filing of a petition for an order of commitment, the

superintendent must apply to the court for the designation of two examining physicians to certify that the inmate is mentally ill (Correction Law, § 402, subd 1). Here, following the transfer of Lindner and Cesario, appellant applied as required for the appointment of two examining physicians. The court denied his application and held that subdivision 9 is unconstitutional on the grounds that the statute, (1) fails to provide for an examination by physicians outside the influence of the prison, and (2) does not provide for prior judicial review of the necessity for a prisoner's commitment. Appellant seeks reversal of this determination. "There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of the individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law *(Specht v. Patterson,* 386 U. S. 605, 608"; *O'Connor v Donaldson,* 422 US 563, 580; see, also, *Matter of Coates,* 9 NY2d 242, app dsmd 368 US 34). Incarceration in a mental hospital is sufficiently different from incarceration in a prison to require due process safeguards in any transfer of an inmate to a hospital. (For a thorough discussion of the differences between incarceration in a mental hospital and incarceration in a prison, see *Matthews v Hardy,* 420 F2d 607, 610-611, cert den 397 US 1010.) The transfer of a prisoner to a mental hospital is more than an administrative matter *(Matthews v Hardy, supra).* However, a valid temporary confinement may be effected prior to judicial review where detention is necessary for the protection of society and for the welfare of the allegedly mentally ill person *(Fhagen v Miller,* 29 NY2d 348, cert den 409 US 845; see, also, *Lessard v Schmidt,* 349 F Supp 1078). Although a prison inmate poses no threat to society, the State has a continuing and legitimate interest in the welfare of mentally ill persons in custody and in maintaining order within its prisons. The Court of Appeals in *Fhagen v Miller (supra)* upheld the constitutionality of both the emergency and ordinary civil commitment procedures for the involuntary commitment of one alleged to be mentally ill (Mental Hygiene Law, §§ 72, 78 [predecessors of Mental Hygiene Law, § 9.39]), despite the fact that no doctor's certificate was required for an emergency involuntary commitment. Moreover, the court stated (p 353): "Due process does, ordinarily, demand reasonable notice and an opportunity to be heard *in advance* of confinement or restraint. However, as we declared in *Matter of Coates* (9 N Y 2d 242, 249), 'where immediate action is necessary for the protection of society and for the welfare of the allegedly mentally ill person, [it] does not require notice or hearing as a condition precedent to valid *temporary* confinement.' " (Emphasis supplied.) I agree with the majority that the specific deficiencies pointed out by the court below do not constitute a denial of due process. The failure of the parties to brief and argue other constitutional issues should not inhibit this court from holding that subdivision 9 of section 402 of the Correction Law, and indeed all of section 402, is unconstitutional because the procedures for a subsequent hearing to be accorded the prisoner following his emergency transfer are constitutionally deficient. Although a valid temporary confinement may be had in advance of a hearing, involuntary detention may not be justified unless there is some means within a reasonable time frame to test the validity of the confinement. Some provision must be made for a timely hearing to review the basis for the detention. As the Court of Appeals stated in *Fhagen v Miller (supra,* p 354), an involuntarily confined mental patient "is not unconstitutionally deprived of his liberty so long as he is afforded an opportunity within a reasonably short period 'to litigate fully the question of [his] mental illness and the propriety of the proceedings which led to [his] confinement'. *(Matter*

*of Coates,* 9 N Y 2d [242, 249].)" Although several Federal courts have expressed varied opinions as to how soon after the initial confinement a hearing must be held, there is an apparent consensus that a fixed maximum period must be established to provide the allegedly mentally ill person with due process *(Lessard v Schmidt, supra; Logan v Arafeh,* 346 F Supp 1265, affd 411 US 911; *Lynch v Baxley,* 386 F Supp 378; *Bell v Wayne County Gen. Hosp. at Eloise,* 384 F Supp 1085; *Doremus v Farrell,* 407 F Supp 509; *Suzuki v Quisenberry,* 411 F Supp 1113; *Suzuki v Alba,* 438 F Supp 1106; see, also, *Kendall v True,* 391 F Supp 413). The State statutes which were deemed constitutional by Federal courts uniformly set forth maximum time limits. In those cases where statutes were struck down as unconstitutional, the Federal courts freely suggested or mandated particular time limits which would provide due process. Even the statute and regulations under consideration by the Court of Appeals in *Fhagen* created a procedure whereby the patient could not be involuntarily held beyond fixed time periods without the commencement of ordinary commitment proceedings or a hearing. Section 402 of the Correction Law fails to set forth any fixed period of time within which the ordinary transfer proceeding must be commenced and within which the actual hearing must be held. This deficiency amounts to a denial of due process. Subdivision 9 of section 402 provides only that an ordinary transfer proceeding "shall immediately be commenced" once the prisoner has been transferred to a mental institution and thus fails to set forth any period of time within which the ordinary transfer proceeding must be commenced. Although a public official will be presumed to do nothing contrary to his official duty or omit anything which his official duty requires to be done (Richardson, Evidence [10th ed], § 72), there is no standard by which "immediately" may be judged (see, generally, *People v Frudenberg,* 209 NY 218). Section 402 merely urges prison officials and the judiciary to act promptly by using such language as "shall immediately be commenced" and "forthwith". Clearly, section 402 in its entirety is constitutionally defective in failing to set forth specified time limits within which the procedures subsequent to the involuntary temporary transfer of an inmate to a mental institution, most importantly a hearing, must occur. Further, section 402 is also constitutionally deficient in that the allegedly mentally ill inmate is not empowered to individually request a hearing. Although the inmate is entitled to notice of the superintendent's application for an order of commitment (Correction Law, § 402, subd 3), subdivision 5 of section 402 provides for a hearing only "Upon the demand * * * by any relative or near friend on behalf of such alleged mentally ill person". The statutory procedures upheld in *Fhagen* clearly provided for a hearing to be held if requested by the patient himself or by someone on his behalf. Moreover, section 9.39 of the Mental Hygiene Law, which outlines the procedure for the emergency commitment of an allegedly mentally ill person, provides that the patient himself can request either a preliminary hearing (Mental Hygiene Law, § 9.39, subd [a]) or a hearing pursuant to the ordinary involuntary commitment procedures (Mental Hygiene Law, § 9.31). The emergency procedures of section 402 simply do not adequately safeguard the allegedly mentally ill inmate's constitutional right to due process of law in that they deny him the right to demand a hearing in his own behalf. These due process deficiencies, however, also evince a denial of equal protection under the law to these prisoners. "Prisoner patients are entitled to *substantially* the same safeguards afforded non-prisoners" *(United States ex rel. Schuster v Herold,* 410 F2d 1071, 1084, cert den 396 US 847). In the light of *Baxstrom v Herold* (383 US 107), it is clear that "the *procedures* to

be followed in determining whether one is committable must be unaffected by the irrelevant circumstance that one is * * * under sentence pursuant to a criminal conviction" *(United States ex rel. Schuster v Herold, supra,* p 1081). Besides the fact that inmates cannot individually request a hearing while others can, there are other substantial differences between the provisions for emergency involuntary civil commitments found in section 9.39 of the Mental Hygiene Law and the emergency provisions of section 402 of the Correction Law. First of all, section 9.39 provides for a preliminary hearing to determine whether "there is reasonable cause to believe that the patient has a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others". Section 402 makes no provision for a preliminary hearing. Second, section 9.39 creates exact time limits within which certain procedures are to be completed or the patient is to be released. As noted above, section 402 contains no specific time limits which govern the procedure in the transfer of prison inmates to mental hospitals. Moreover, the emergency medical examinations of allegedly mentally ill prisoners as set forth in the Correction Law differ in two important respects from the provisions of the Mental Hygiene Law: (1) prisoners are not required to be examined by physicians who are associated with the admitting institution and independent of the correctional facility, and (2) the prisoners need not be examined by a psychiatrist (Correction Law, § 402, subd 9; Mental Hygiene Law, § 9.39, subd [a]). It is clear from these discrepancies between the procedures outlined in section 402 of the Correction Law and those set forth in section 9.39 of the Mental Hygiene Law that allegedly mentally ill prisoners are denied equal protection under the law under the emergency commitment provisions of section 402 *(Baxstrom v Herold, supra; United States ex rel. Schuster v Herold, supra).* Although these defects may not constitute a denial of due process, section 402 of the Correction Law simply does not provide allegedly mentally ill prisoners with *"substantially* the same [procedural] safeguards" for their emergency commitment to a mental hospital as the Mental Hygiene Law provides for nonprisoners *(United States ex rel. Schuster v Herold, supra,* p 1084). In sum, section 402 of the Correction Law is unconstitutional in that it denies allegedly mentally ill prisoners in apparent need of emergency incarceration in a mental hospital due process and equal protection under the law. Although the parties argued and briefed only certain due process issues before the court below and this court, since their arguments directly attack the constitutionality of the statute, I maintain that this court has jurisdiction to consider other due process arguments as well as the equal protection issue (see, generally, *Stanley v Illinois,* 405 US 645). Accordingly, the order appealed from should be affirmed. (Appeal from order of Oneida Supreme Court—commitment.) Present—Dillon, P. J., Schnepp, Callahan, Witmer and Moule, JJ. [96 Misc 2d 234.]