OPINION OF THE COURT
Vincent E. Doyle, J.
This matter came before this court by an order to show cause granted on July 2, 1980. A hearing was held on September 4,1980 and continued on September 12, 23 and October 2, 1980. The matter was submitted after legal briefs were received with a final update on April 24, 1981. The petitioner seeks a judgment requiring the Commis *274 sioner of Personnel of the County of Erie to place the petitioner’s name on the respondent Clark’s certified civil service list of eligible candidates for the position of police officer/Deputy Sheriff-criminal. Respondent Clark has moved for an order dismissing the cohiplaint and requesting summary judgment on the ground that the cause of action is without merit. The New York State Attorney-General appeared as an intervenor and has moved for a judgment dismissing the petition insofar as it challenges the constitutionality and validity of section 58 of the Civil Service Law. In the alternative, the Attorney-General has moved for a judgment declaring section 58 of the Civil Service Law constitutional in all respects.
The petitioner applied to take the civil service examination for police officer/Deputy Sheriff-criminal to be given on November 3, 1979 pursuant to a notice posted by the Erie County Civil Service Commission. The notice listed the residency requirements and minimal qualifications of candidates who wanted to take the examination. All the applicants for the examination were sent conditional admission cards. Their applications had not been fully reviewed to determine whether the individual candidates met the residency requirements or other minimal qualifications. The petitioner took the written examination and received a notice dated March 13,1980 of his passing score of 97. He then was tested for agility, was physically examined and personally interviewed by staff members of the Erie County Civil Service Commission. In addition, he was given chest X rays.
Sometime near the end of June, the petitioner contacted West Seneca Police Chief Bruce Manning to inquire about the possibility of his being hired before his 29th birthday on July 5,1980. The petitioner was concerned that without Chief Manning’s help, the respondent Town Board of the Town of West Seneca (which actually makes the appointments to vacancies in the position of police officer), would wait until after July 5, 1980 to rule on his application and would find him ineligible because he was too old.
Chief Manning spoke to Robert Cownie, Senior Personnel Specialist in charge of the Examinations Division of the Erie County Personnel Department, who told him the *275 certified list of eligible candidates would be available for inspection on July 1,1980 and that the petitioner’s score on the examination was 97. Chief Manning, believing the petitioner most likely would be listed as the number one candidate, prepared a letter dated June 27, 1980, recommending the petitioner for appointment as a police officer to fill a vacancy. According to Chief Manning, the town board routinely appoints those persons he recommends for positions. The board was scheduled to meet on June 30, 1980. Its next meeting was not scheduled to be held until July 7, 1980, two days after the petitioner’s 29th birthday. Chief Manning’s letter was not given to the town board on June 30, 1980, only because the list of eligible candidates had yet to be certified by the county.
Chief Manning was also told by Mr. Cownie that a problem existed with respect to the petitioner’s meeting the Erie County Civil Service Commission’s residency requirement. After learning of this potential problem from Chief Manning, the petitioner retained counsel who presented affidavits to the commission in an effort to demonstrate that the petitioner was a resident of the Town of West Seneca. In spite of this effort, the petitioner received a notice of disqualification dated July 1,1980 from the Erie County Department of Personnel which stated his name would not appear on the eligible list because he lacked legal residence in Erie County or in a contiguous county. The notice also said the petitioner would not be certified to any appointing authority until he remedied some weight problem.
The petitioner contends that but for respondent Clark’s erroneous determination of the residency issue and erroneous application of an invalid rule, he could have been and probably would have been appointed to the West Seneca police force. He also argues that the county’s procedure in establishing the list of eligible candidates was highly arbitrary and contrary to the purpose of having eligibility lists.
The respondents counter that the petitioner has not met the residency requirements and even if he is found to have met them, the petitioner could not have been appointed prior to his 29th birthday because the town board did not have a certified list until July 1, 1980.
*276 Initially, this court must consider what is meant by the language in section 58 of the Civil Service Law. Subdivision 1 of section 58 provides in relevant part:
“Notwithstanding any other provision *** no person shall be eligible for provisional or permanent appointment *** as a police officer *** unless he shall satisfy the following basic requirements:
“(a) he is not less than twenty nor more than twenty-nine years of age, provided, however, that the time spent on military duty or on terminal leave, not exceeding a total of six years, shall be subtracted from the age of any applicant who has passed his twenty-ninth birthday as provided in subdivision ten-a of section two hundred forty-three of the military law * * *” (emphasis added).
The respondent contends that because the petitioner reached his 29th birthday on July 5,1980, he is “more than twenty-nine years of age”, and cannot be appointed to the position of police officer. This court cannot agree that such an interpretation is compelled by the “plain meaning” of the statute.
In Whitehair v Civil Serv. Comm. of Monroe County (56 AD2d 711), a case with facts similar to the instant one, the plaintiff took a police officer examination while he was still 28 years old. By the time the list of qualified applicants was published, he had reached his 29th birthday.[1] The Civil Service Commission refused to put his name on the list because it considered him to be too old for appointment under the law. The Whitehair appellate court upheld the constitutionality of section 58 of the Civil Service Law and its age limits (see Knapp v Monroe County Civ. Serv. Comm., 77 AD2d 817, mot for lv to app den 51 NY2d 708), by affirming Special Term’s order granting summary judgment to the defendant commission. Both courts, however, never explicitly addressed the issue of whether someone who had reached his or her 29th birthday, but not his or her 30th, actually exceeded the maximum age limitation of the statute, because it was never raised or argued by the *277 parties (see Hartford Acc. & Ind. Co. v Village of Hempstead, 48 NY2d 218, 221, n 3; Matter of Lindner, 71 AD2d 829). The appellate court’s decision in Whitehair, therefore, cannot be viewed as binding precedent on the question of the meaning of the phrase “more than twenty-nine years of age”. This court must now endeavor to construe it.
A division of opinion exists as to whether a person is more than a certain age when he or she reaches a particular anniversary. Usually a person’s age is attributed to the entire year between birth dates. In other words, a person is considered 29 not only on his or her birthday, but also during the entire year until his or her 30th birthday.
The issue here, however, requires a more precise definition. A question presented is whether it is proper to treat the words “more than twenty-nine years of age” as being the same as “over twenty-nine years of age.” The answer is yes. The Appellate Division, Fourth Department, in Knapp v Monroe County Civ. Serv. Comm. (77 AD2d 817, supra), described the effect of section 58 as prohibiting the original appointment of police officers “over 29 years of age” (emphasis added). Courts have held that persons are not over a certain age until their next birthday is reached (People ex rel. Makin v Wilkins, 22 AD2d 497; Oliver v Blum, Supreme Ct, Orleans County, Jan. 30, 1980, Miles, J.; Wilson v Mid-Continental Life Ins. Co., 159 Okla 191; Watson v Loyal Union Life Assn., 143 Okla 4).
Further, in Makin (supra), a statute making carnal abuse “of a child of the age of ten years” a felony, was held to apply in all those cases when the victim had not yet reached his or her 11th birthday.
Similarly, appointees to the position of police officer must be considered 29 years of age and not “more than twenty-nine years of age” until they have reached their 30 th birthday.
If the 29th birthday was to be controlling on the issue of eligibility as the respondent contends, the Legislature would have employed the words “has reached his twenty-ninth birthday” instead of using the language “more than twenty-nine years of age.” This conclusion is supported by the fact that the Legislature utilized the specific phrase *278 “who has passed his twenty-ninth birthday” when furnishing veteran’s credit in section 58.
The Legislature’s intent may also be revealed by reviewing the legislative history of section 58 of the Civil Service Law. Memoranda prepared and sent to the Governor prior to the passage in 1965 of section 58 by the Attorney-General, the New York State Association Chiefs of Police, Inc., and the Association of Towns of the State of New York all make reference to the maximum age limit for applicants for the position of police officer. These communications of course, “are not conclusive but they are aids in seeking legislative intent” (De Ville v Continental Assur. Co., 10 AD2d 386, 390, affd 8 NY2d 1080). These memoranda use the words “between twenty-one[2] and twenty-nine years of age” (emphasis added) when discussing the provisions of the bill which ultimately was enacted rather than the bill’s “not less than twenty-one nor more than twenty-nine years of age” language. While the dictionary defines “between” to mean “[a] space which separates” (Black’s Law Dictionary [4th rev ed]), obviously the authors of the memoranda and the Governor did not contemplate the proposed law would exclude persons 21 years old from appointment as police officers. This court, therefore; cannot utilize the definition of “between” to help interpret the language of section 58 (subd 1, par [a]). In conclusion the memoranda are unrevealing as to the intended meaning.
When a statute has more than one possible interpretation, a court must strive to avoid a construction which would result in an injustice or a hardship since the Legislature is presumed not to intend such an effect (Matter of Breen v Board of Trustees of N.Y. Fire Dept. Pension Fund, 299 NY 8, 19; Deverho Constr. Co. v State of New York, 94 Misc 2d 1053). Here, not only is it more logical to interpret the phrase “more than twenty-nine years of age” to mean someone who has reached his or her 30th birthday, but it is also more likely to benefit the public. Under this interpretation, communities like West Seneca have the additional opportunity to select qualified persons who have reached *279 their 29th birthdays, but not their 30th birthdays, to serve as police officers.
Accordingly, this court holds that the language “more than twenty-nine years of age” of section 58 of the Civil Service Law operates to disqualify only those persons who have reached their 30th birthday from appointment as police officers. In short, “twenty-nine is twenty-nine”. More than 29 is 30.
In any event, the petitioner is correct in his assertion that the prompt establishment of a list of eligible candidates is critical for any position which has an age ceiling. In this case, due to the delays in the commission’s procedures, those persons, who otherwise qualified, were effectively foreclosed from appointment to the position of police officer for a substantial portion of the time that they were of the proper statutory age. Those persons who were near the maximum age when they took the police officer examination would have had to have been appointed almost immediately after the list was established so as to avoid disqualification. Likewise, those persons who turned 20 years of age on the day they took the written test would not have been eligible for appointment until they were almost 21.
The county system operated to reduce the statutorily defined period of eligibility and thus impinged on the legislative desire expressed through section 58 of the Civil Service Law to have a maximum period of eligibility for candidates between the ages of 19 and 30. This result is arbitrary and capricious and disregards the legislative intent by effectively requiring even narrower age restrictions than permitted under section 58.
Even considering the time the respondent would have taken to administer the agility and physical tests (including X rays), the town board would have had the opportunity to appoint the petitioner to the position of police officer before his 29th birthday if the Erie County Civil Service Commission had established the list earlier. This court, therefore, using its equitable powers, deems any town board appointment of the petitioner to the position of police officer, should the town so appoint, to have *280 taken place before July 5,1980 (see, e.g., Matter of Smith v Hoyt, 59 AD2d 1058; see, also, Matter of Mena v D'Ambrose, 58 AD2d 514, mod 44 NY2d 428).
The second issue which this court must address is whether the four-month durational residency rule for recruits to municipal positions as set forth in rule VII of the Rules for the Classified Civil Service of the County of Erie and the towns, village special districts and school districts within the county is constitutionally valid. Subdivision 4-a of section 23 of the Civil Service Law authorizes local civil service commissions to require residency of candidates for examination for appointment to positions over which it has jurisdiction. Respondent Clark issued rule VII pursuant to subdivision 4-a of section 23. Rule VII states, in pertinent part: “An applicant must be at the time of examination, and at the time of appointment, and for at least four months prior thereto a resident of the municipality”.
Petitioner contends rule VII is ambiguous as to what event the four-month residency period attached, and that in any event it is constitutionally invalid. Deputy Commissioner of Personnel for the County of Erie, Kevin Loos, who testified in place of John V. Clark, the Commissioner of Personnel, said the rule requires an individual to be a resident four months prior to the date of the application and the examination and a resident at the time of appointment.
The New York State Court of Appeals recently addressed the issue of durational residence requirements in Matter of Gordon (48 NY2d 266). The court held that a six-month durational requirement of “actual residency” prior to a candidate’s application for admission to law practice violated the privilege and immunities clause of the United States Constitution. The court, in discussing the reach of the privilege and immunities clause, said, “[I]t is settled that a State may not premise an individual’s right to engage in his chosen occupation within its borders solely on residence.” (Matter of Gordon, supra, at p 271.) The court, however, also recognized a narrow exception to the general prohibition and allowed that the State may differentiate between residents and nonresidents in “matters which directly implicate its sovereignty, such as *** *281 entitlement to public office (Chimento v Stark, 414 US 802)” (Matter of Gordon, supra, p 271).
In Chimento v Stark (414 US 802) the United States Supreme Court upheld a seven-year durational residence requirement for candidates seeking election to the office of Governor of a State. Police officers, of course, are not elected public officials, but rather are appointed civil servants. Clearly, they too have the constitutional right to pursue their chosen career free from illegal durational residency requirements.
A two-step analysis must be applied whenever a governmental entity imposes a discriminatory rule “which significantly impairs the efforts of nonresidents to earn a livelihood” (Matter of Gordon, supra, at p 273). Here, given two equally qualified candidates for the position of police officer, both who meet the age and physical requirements and possess the requisite character and fitness, rule VII would deny one the opportunity to take the examination based solely upon residence. Rule VII would also disqualify a person who had not resided in the municipality (or contiguous municipality) for four months prior to appointment. This court, therefore, must first determine if the respondents have shown a substantial interest to justify the discrimination — that is, whether “non-citizens constitute a peculiar source of the evil at which the [rule] is aimed.” (Toomer v Witsell, 334 US 385, 398.) If the respondents have established such an interest, then this court must scrutinize the means of discriminating to ascertain if they are “narrowly drawn and are the least restrictive alternatives available” (Matter of Gordon, 48 NY2d 266, 273, supra).
The only suggested rationale for having a four-month residency rule came from Mr. Loos at the hearing. He testified that residents pay taxes and taxpayers in the different municipalities feel they should receive a preference for employment. The respondents, however, have failed to explain the relevancy of this “interest” in preappointment eligibility since the Erie County Civil Service Commission has no postappointment residence rule. In addition, paying taxes was considered specifically and re *282 jected as a permissible basis for a durational residency requirement in Shapiro v Thompson (394 US 618, 632).
Moreover, rule VII infringes upon the petitioner’s right to travel. Under said rule, he can travel to West Seneca — but only if he gives up the pursuit of his present profession in law enforcement and risks becoming unemployed for at least four months. This four-month period of unemployment could become appreciably longer considering the delays in the Erie County Civil Service Commission’s procedures with regard to publishing eligibility lists.
Accordingly, this court finds that the four-month durational residence requirement of rule VII heavily penalizes nonresidents without adequate justification and holds it to be unconstitutional as a violation of the equal protection and privilege and immunities clauses of the New York State Constitution and the United States Constitution. It cannot be invoked by the respondent Clark to refuse to place petitioner’s name on the certified list of candidates.
Thus, the respondent Clark, as Commissioner of Personnel of the County of Erie, is ordered to place the petitioner’s name on the list of certified eligible candidates. Any eligibility and/or appointment of the petitioner as a police officer is ordered to be nunc pro tunc or as if it were before July 5, 1980.
This court declines from reaching the issue of the constitutionality of section 58 of the Civil Service Law inasmuch as the statute does not disqualify the petitioner on the basis of his age until he has reached his 30th birthday.
The Attorney-General’s motion for summary judgment, therefore, is denied. Respondent Clark’s motion for summary judgment is also denied.

. The publication of the list in Whitehair had been delayed as the result of the granting of injunctive relief by the United States District Court for the Western District of New York in Howard v Freeman (No. 74-234), a case concerning the testing and hiring of minorities as police officers.

. “Twenty” was substituted for “twenty-one” by legislative amendment in 1968 (L 1968, eh 765).