**Sheila LILES et al., Plaintiffs,**

v.

**Benjamin WARD, Individually, and as Commissioner of Correctional Services, et al., Defendants.**

**No. 76 Civ. 4786.**

United States District Court, S. D. New York.

Nov. 12, 1976.

Michael C. Fahey, Acting Project Director, Bronx Legal Services Corp., New York City, for plaintiffs; Stephen M. Latimer, New York City, of counsel.

Charles H. Jones, Newark, N. J., Alvin J. Bronstein, Ed Koren, Nan Aron, National Prison Project of the A.C.L.U. Foundation, Washington, D. C., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Gerald J. Ryan, Buffalo, N. Y., of counsel.

## MEMORANDUM

FRANKEL, District Judge.

The seven plaintiffs are serving terms of imprisonment under New York State convictions. Until recently their place of confinement was the Bedford Hills Correctional Facility. They have been found guilty of disciplinary infractions during their terms, and have been subjected to prison sanctions, including substantial periods of segregation they have not completed serving. On July 23, 1976, they allege, they were transferred to Matteawan State Hospital, which is designated and used to confine and treat prisoners who are mentally ill. In their complaint, they charge maltreatment of various kinds—unwarranted segregation, severely close confinement, involuntary treatment with psychotropic drugs, and a general course of coercion and abuse under a behavior modification program known, in our time of relentless acronyms, as S.T.E.A.-D.Y. ("Steps Toward Eventual Acceptance of a Disciplined You"). As a prior, threshold matter, they contend that their transfer to a hospital for prisoners who are mentally ill without a commitment hearing violates their rights to due process and equal protection under the Fourteenth Amendment. In the court's view this first claim, resolved preliminarily for the plaintiffs, is the only one requiring decision at the present juncture.

The occasion is a motion for a preliminary injunction. Both sides have filed affidavits. Some gaps and conflicts in these submissions were sufficiently handled for purposes of the motion by a visit of court and counsel to the Matteawan facility on November 7, 1976. As to the legal issues, defendants have hewn to a rigid line that the court lacks jurisdiction because, as they phrase it, "transfer of inmates from one prison to another in the Correctional system is not a matter requiring a hearing, judicial or otherwise." That proposition, if the quoted phrasing may be a little sweeping, is rested upon strong recent precedents, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451

(1976), and is not really contested here. But cf. *United States ex rel. Schuster v. Herold,* 410 F.2d 1071, 1077–78 (2d Cir. 1969). Plaintiffs argue, however, that defendants are in the wrong key numbers, and that the controlling authorities are those forbidding commitment to a place for mentally sick prisoners without a hearing. Upon the facts as hereinafter found, the court sustains plaintiffs' thesis.

### I

Not seriously answering plaintiffs' legal position, defendants have urged that plaintiffs are not in a hospital for mentally ill prisoners, but in what is, though formerly part of such a hospital, a distinct enclave designated as "Bedford Hills Correctional Facility Annex." It turns out, however, that the place in question is physically, administratively, morally, and spiritually a part of Matteawan, and that the official excision and rechristening upon which defendants rely cannot erase the decisive realities.

Defendants' position begins with an amendment to a regulation of defendant Commissioner, conveniently dated July 23, 1976, when plaintiffs were transferred. The changed regulation says in pertinent part, with the official underscoring showing the amendatory additions:

"There shall be in the department an institution to be known as Matteawan State Hospital which shall be located at Beacon in Dutchess County, New York, on the grounds of the Fishkill Correctional Facility, and which shall consist of Buildings one, two, three, four except wards 14 and 18 thereof, five, six, seven, *except ward 19 thereof,* seven-a, eight and nine. Matteawan State Hospital shall also consist of Building thirteen North until inmates thereof are transferred to Wards sixteen and twenty of Building four, and thereafter Building thirteen North shall be part of Fishkill Correctional Facility.

"Pursuant to the authority vested in me as Commissioner of the Department

of Correctional Services of the State of New York under Sections 70 and 112 of the Correction Law, the following section of Title 7 of the New York State Official Compilation of Codes, Rules and Regulations is added to read as follows:

"*Section 100.81 Bedford Hills Correctional Facility Annex.*

"*There shall be in the department an institution to be known as Bedford Hills Correctional Facility Annex which shall be located at: building seven, ward 19, on the grounds of Fishkill Correctional Facility at Beacon in Dutchess County New York. This portion shall be used as a special housing unit for inmates confined in Bedford Hills Correctional Facility, but while in such unit they shall be deemed to be under the care, custody and control of the Superintendent of Fishkill Correctional Facility.*"[1]

It is this enactment which leads an Acting Deputy Superintendent to tell us in an affidavit that plaintiffs' suit is mistaken because:

"The plaintiffs are presently housed in a housing unit which is physically part of the Matteawan State Hospital but has been designated the Bedford Hills Correctional Facility Annex."[2]

The physical facts to which the Deputy refers are stark and compelling. While the quoted regulation speaks of a series of ten "buildings" by number, the fact is that all of them are part of a single interconnected structure which an unrehearsed observer might call a single "building." This struc-ture comprises 21 wards, tailor and laundry shop, kitchen, mess hall, school room, infirmary and morgue. Apart from how outsiders might see it, during the court's visit, the personnel conducting our tour referred to the whole connected edifice, lumping all the numbers together, as "the main building." When we asked, consulting their Commissioner's regulation, which number applied to what, our guides found it necessary to call colleagues who knew these designations. The numeration, we learned, relates to segments that nobody would normally call separate "buildings;" the separations identify at most parts of buildings, evidently reflecting times of construction and perhaps serving other ends obscure to us as well as to those who work there.[3]

Ward 19—which, not uninterestingly, continues to go by that name during plaintiffs' sojourn—is a corridor of highly secure, individual cells on the second floor of the connected wing known to the cognoscenti as "building seven." The same wing or building houses Wards 9, 11, 13, 15, 17 and 21. Ward 21 is the only other part of the building which houses women, all of whom are committed to Matteawan.[4] Ward 19 is entered (and can only be entered), at either end, from adjoining parts of the "main building," which is all Matteawan, even under the recently revised nomenclature.

Sharing interconnected places of confinement, the plaintiffs use other facilities that are the physical grounds and structures of Matteawan. A kind of penthouse recreation corridor, a floor above their cells, is

---

1. 7 N.Y.C.R.R. § 101.2(a), headed "Matteawan State Hospital."

2. No student of law or government would doubt that, in making definitions for the work of governing, the administrator's reach may exceed the lexicographer's grasp. Still it is a lusty stretch to call a central wing in a Matteawan building an "Annex" to Bedford Hills, some 30 or more miles away, when the dictionary speaks of an annex as "[s]omething annexed or appended," or "[a] subsidiary building, or wing, to a building." Webster's Second (1959).

3. A correctional officer—gracious and helpful, as were all those we encountered—drew a rough diagram marking the various "buildings." This piece of paper, together with other materials collected during the visit (or mailed or delivered thereafter by Correctional Services personnel as agreed addenda), will be placed in a file folder to be marked "Court Exhibit 1—Site Visit Materials, 11–7–76," for such later reference as may prove necessary or useful.

4. In fact, the Court was informed that the *only* residents of the main building who are not in Matteawan as a result of commitment proceedings are the instant plaintiffs.

used both by plaintiffs and by official Matteawan "patients," though at different times. An outdoor recreation area is similarly used. The treatment rooms for female residents are used for the plaintiffs as well as the committed women of Ward 21.

The entire hierarchy of administrative, custodial, treatment, and maintenance personnel to whom plaintiffs are now answerable, or by whom they are now treated, are "Matteawan" personnel. Matteawan procedures and routines blanket plaintiffs' conditions of confinement. When the court made a tour of the place, the enterprise was, naturally and routinely, in charge of Matteawan's, not Bedford Hills's, Chief Psychologist. Memoranda placed on the Ward 19 bulletin board include a "sign-up" sheet for S.T.E.A.D.Y., which indicates that Superintendent's Proceedings are held before this same Chief Psychologist. The same Matteawan guards who work elsewhere in the "main building" are in charge of security, the quelling of disturbances, the handling of laundry, food, clothing, and other paraphernalia of daily life. Plaintiffs are treated by Matteawan medical (including psychiatric) personnel. The general notices on their "ward" bulletin board include the Matteawan notices applicable to other patients—e. g., one concerning Dental Sick Call for "All Housing Units," another on the same subject affecting "Female Patients," and a directive on rules respecting correspondence.

Plaintiffs receive their mail at the same address as that for every other Matteawan inmate. Looking through their barred windows, they see (and are seen by) only Matteawan patients among the inmates around them. The others naturally and automatically call them "patients." People who come through performing work details are Matteawan patients. The rooms in which

plaintiffs are confined are referred to by the staff as "observation rooms."

It must be said, to put the inescapable point, that plaintiffs are "in" Matteawan in every conceivably meaningful sense of the proposition. It is not necessary, though it may not be amiss, to add that to everyone in this State even modestly familiar with relevant institutions, "Matteawan" is a word in the language for the place to which the criminally insane are consigned. The plaintiffs know this and are reminded of it wherever they look around them. They know, see, and experience what everyone refers to quite simply as residence in "a hospital for the criminally insane * * *." *United States ex rel. Schuster v. Herold,* 410 F.2d 1071, 1077 (2d Cir. 1969). They are committed to live in "the grievously distressing atmosphere of an institution * * which houses the insane." *Id.* The dispute about whether they have been receiving or will or should receive some course of psychiatric treatment is not of central importance at this time.[5] The fact that one is in such an asylum and *not* being treated scarcely enhances the justification for forcible retention there. *Id.* It may make a difference, of course, that plaintiffs are not officially catalogued as "insane" or "mentally ill," though the official assurance on that score must *ring* hollow in the ear as the sights and sounds of Matteawan fill the round of days. But however it feels or looks to the varieties of affected people, the plaintiffs are right when they complain that they are in Matteawan and that they may be sent there only if the apposite commands of New York law and the Constitution have first been obeyed.

## II

The applicable law is plain, and it is dispositively in plaintiffs' favor. Under the

5. The S.T.E.A.D.Y. program was suspended about two months ago, and is now described by defendants as being subject to "a hold." Plaintiffs are likewise in "a hold," but nothing appears to warrant their maintaining that posture in Matteawan rather than Bedford Hills. There is a suggestion that the Matteawan cells are more secure than any at Bedford Hills, a facility housing women convicted of the most serious kinds of felonies, and that this may justify plaintiffs' transfer. The attempted justification is overwhelmed by the countervailing facts found by this court.

law of New York, no prisoner may be committed to Matteawan without a judicial determination that mental illness warrants the consignment. N.Y. Correction Law § 408. That state protection may be required as a matter of due process, cf. *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *Sarzen v. Gaughan*, 489 F.2d 1076, 1083 (1st Cir. 1973), but there is no need to reach the point in this case. For it is clear that the State is forbidden under the equal protection clause to "arbitrarily withhold * * * from some" the procedures "generally available" to those within the protected class. *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); see also *id.* at 114–115, 86 S.Ct. 760; *United States ex rel. Schuster v. Herold, supra.* And it is equally clear that the withholding of the usual safeguards in the transfer of the plaintiffs before us has been arbitrary. The procedural protections may not be sidestepped or nullified by the device of calling an integral, internal, nonseparable piece of Matteawan by any other name. We boast that justice is blind. But we do not mean it may be so readily blinded.

Plaintiffs' motion is granted. Defendants must cease forthwith confining plaintiffs in Matteawan State Hospital and refrain from committing them to that place hereafter unless and until a judicial hearing has been held, resulting in findings requisite for any such commitment.

It is so ordered.