*235 OPINION OF THE COURT
John R. Tenney, J.
An application has been made by William S. Kirk, Acting Superintendant of Elmira Correctional Facility, for a designation by the court of two physicians to examine John Cesario and David Lindner pursuant to subdivision 1 of section 402 of the Correction Law. The prisoners have already been transferred to Central New York Psychiatric Center under the emergency provisions of subdivision 9 of section 402. The application is denied, and the prisoners should be transferred back to Elmira Correctional Facility for such action as is deemed appropriate.
 Subdivision 9 of section 402 fails to provide adequate due process safeguards and cannot be reconciled with subdivision 1 of section 402. Both read as follows:
"1. Whenever the physician of any correctional facility * * * shall report in writing to the superintendent that any person undergoing a sentence of imprisonment * * * confined therein is, in his opinion, mentally ill, such superintendent shall apply to a judge of the county court or justice of the supreme court in the county to cause an examination to be made of such person by two examining physicians. Such physicians shall be designated by the judge to whom the application is made. Each such physician, if satisfied after a personal examination, that such inmate is mentally ill and in need of care and treatment, shall make a certificate to such effect. Before making such certificate, however, he shall consider alternative forms of care and treatment available during confinement in such correctional facility, penitentiary, jail, reformatory or correctional institution that might be adequate to provide for such inmate’s needs without requiring hospitalization.”
"9. * * * an inmate of a correctional facility * * * may be admitted on an emergency basis to the Central New York Psychiatric Center upon the certification by two examining physicians * * * employed by the office of mental health and associated with the correctional facility in which such inmate is confined, that the inmate suffers from a mental illness which is likely to result in serious harm to himself or others as defined in subdivision (a) of section 9.39 of the mental hygiene law. Any person so committed shall be delivered to the director of the appropriate hospital as designated in the rules and regulations of the office of mental health. Upon *236 delivery of such person to a hospital operated by the office of mental health, a proceeding under this section shall immediately be commenced.”
It appears that the Legislature originally intended under subdivision 1 of section 402 that before a transfer from a correctional facility to a mental health facility was made, the prisoner would be entitled to some court review. Since it has been determined that a protected right is involved in such a transfer (O’Connor v Donaldson, 422 US 563; Specht v Patterson, 386 US 605; United States ex rel. Schuster v Herold, 410 F2d 1071) there must be "procedural due process” protection. The key word, of course, is "transfer”.*
Subdivision 1 spells out the intention (1) to have the court appoint examining physicians outside the influence of the petitioning institution (2) to have a review of the findings by the court. (Liles v Ward, 424 F Supp 675.) Subdivision 8 of section 402 then authorizes the court to transfer the prisoner forthwith, prior to hearing, providing there is proof that the correctional facility cannot adequately care for the prisoner. These procedures are the bare minimum protections the Legislature mandated before a transfer could be made.
Subdivision 9, aside from its lack of definition of emergency, fails to provide any input or control from outside the institution. To argue that the protection is offered after the transfer, is irrelevant. It is the fact of transfer that is objectionable and prohibited. Although there may in fact be practical considerations, the potential damage to the due process rights cannot be ignored on the grounds of expediency. The institution should not be permitted to take action under an "emergency theory” which is not reviewable until the damage has occurred. The purpose of the statute is to protect the individual from unconstitutional discretion by public officials. (Shuttles-worth v Birmingham, 382 US 87.)
Petitioner states that the two physician examination is sufficient since it is authorized for a civil commitment and has been upheld. (Matter of Coates, 9 NY2d 242.) Again, this is not a civil commitment, and the argument is irrelevant. Although the Schuster case (410 F2d 1071, 1073, supra) implied that the prisoner was entitled to the same procedural safeguards as in civil commitments, the New York Legislature took a broader *237 view. Its intention was to protect the prisoner from administrative abuse of discretion by requiring examination by outside doctors appointed by the court prior to transfer to a mental institution. Civilly, the reasoning is that the individual is at large and a potential danger to himself and/or his community. In this section 402 transfer proceeding, the prisoner is in custody. There is rarely a situation where the institution cannot isolate and protect him for such a time as he can be properly transferred.
Most prisoners object to transfer to mental institutions for various extremely valid reasons. It has been established that the prisoner has a right to procedural protection prior to transfer. Since subdivision 9 attempts to circumvent that protection and is inconsistent with the other provisions of section 402, it cannot be upheld.
Therefore, the application is denied, and David Lindner and John Cesario shall be returned to Elmira Correctional Facility for such action as shall be deemed appropriate.

 While this application has been pending a prisoner transferred under subdivision 9, has been returned to prison without any court action. The prisoner, Joseph Healy, had been on a hunger strike for 17 days, hardly an emergency.