[931 NE2d 76, 905 NYS2d 107]

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH II., Respondent, v SUPERINTENDENT OF SOUTHPORT CORRECTIONAL FACILITY et al., Appellants.

In the Matter of STATE OF NEW YORK, Appellant, v HUMBERTO G., Respondent.

Argued April 28, 2010; decided June 15, 2010

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* Albany (*Andrea Oser, Barbara D. Underwood* and *Robert C. Weisz* of counsel), for appellants in the first and second above-entitled proceedings. Because respondent was admitted to an Office of Mental Health hospital under Mental Hygiene Law article 9 upon his release from prison, he is a "detained sex offender," notwithstanding his subsequent return to prison on a basis now known to be unlawful. (*State of N.Y. ex rel. Harkavy v Consilvio,* 8 NY3d 645; *Matter of Albano v Kirby,* 36 NY2d 526; *Matter of State of New York v Millard,* 19 Misc 3d 283; *People ex rel. David NN. v Hogan,* 53 AD3d 841; *State of N.Y. ex rel. Harkavy v Consilvio,* 7 NY3d 607; *Matter of State of New York v Blair,* 69 AD3d 15; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.,* 8 NY3d 745; *Post v 120 E. End Ave. Corp.,* 62 NY2d 19; *Matter of State of New York v F.E.,* 64 AD3d 497.)

*Mental Hygiene Legal Service, Third Judicial Department,* Albany (*David M. LeVine* and *Sheila E. Shea* of counsel), for respondent in the first above-entitled proceeding. I. A person must still be in custody in order to qualify as a detained sex offender. (*State of N.Y. ex rel. Harkavy v Consilvio,* 7 NY3d 607; *Earley v Murray,* 451 F3d 71, 462 F3d 147, *cert denied sub nom. Burhlre v Earley,* 551 US 1159; *Vitek v Jones,* 445 US 480; *State of N.Y. ex rel. Harkavy v Consilvio,* 8 NY3d 645; *People ex rel. David NN. v Hogan,* 53 AD3d 841, 11 NY3d 708; *People v Ortega,* 69 NY2d 763.) II. The question of whether an unlawful confinement can supply the predicate for a Mental Hygiene Law article 10 commitment may be academic. (*Matter of Larry TT.,* 68 AD3d 1229.) III. Should the State of New York's Mental Hygiene Law article 10 application be reinstated, Joseph II. must be afforded a hearing with respect to whether his admission to an Office of Mental Health facility was pursuant to the standards of Mental Hygiene Law § 9.27. (*Matter of State of New York v Blair,* 69 AD3d 15; *Matter of Coates,* 9 NY2d 242; *Bailey v Pataki,* 636 F Supp 2d 288; *Vitek v Jones,* 445 US 480; *State of N.Y. ex rel. Harkavy v Consilvio,* 7 NY3d 607; *Baxstrom v Herold,* 383 US 107; *State of N.Y. ex rel. Harkavy v Consilvio,* 8 NY3d 645; *Matter of State of New York v Randy M.,* 57 AD3d 1157, 11 NY3d 921; *Matter of State of New York v F.E.,* 64 AD3d 497; *Matter of State of New York v Robinson,* 21 Misc 3d 1120[A], 2008 NY Slip Op 52111[U].) IV. The stay of Joseph II.'s release was improperly issued and continued. (*Lachance v Erickson,* 522 US 262; *Fuentes v Shevin,* 407 US 67; *Mullane v Central*

*Hanover Bank & Trust Co.*, 339 US 306; *Matter of Aho*, 39 NY2d 241; *People ex rel. David NN. v Hogan*, 53 AD3d 841, 11 NY3d 708; *Earley v Murray*, 451 F3d 71, 462 F3d 147, *cert denied sub nom. Burhlre v Earley*, 551 US 1159; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *Matter of Murray v Goord*, 1 NY3d 29; *State of New York v Myers*, 22 Misc 3d 809; *Matter of Douglas Z. [Harlem Val. Psychiatric Ctr.]*, 175 AD2d 450.)

*Mental Hygiene Legal Service, Second Judicial Department*, Mineola (*Rachael E. Seevers, Sidney Hirschfeld* and *Dennis B. Feld* of counsel), for respondent in the second above-entitled proceeding. I. The explicit language of the provisions of Mental Hygiene Law article 10 makes clear that legal custody is a required predicate for any article 10 petition, including those brought pursuant to Mental Hygiene Law § 10.03 (g) (5). (*People ex rel. David NN. v Hogan*, 53 AD3d 841, 11 NY3d 708; *Matter of State of New York v Randy M.*, 57 AD3d 1157, 11 NY3d 921; *People ex rel. Joseph II. v Superintendent of Southport Correctional Facility*, 59 AD3d 921, 13 NY3d 704; *Matter of State of New York v F.E.*, 64 AD3d 497; *Matter of State of New York v Robinson*, 21 Misc 3d 1120[A], 2008 NY Slip Op 52111[U]; *Project Release v Prevost*, 722 F2d 960; *Vitek v Jones*, 445 US 480; *Matter of State of New York v Millard*, 19 Misc 3d 283; *Morrissey v Brewer*, 408 US 471; *Earley v Murray*, 451 F3d 71.) II. The Appellate Division's decision in *Matter of State of New York v Humberto G.* (65 AD3d 690 [2009]) does not conflict with this Court's decision in *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007]). (*Matter of State of New York v Randy M.*, 11 NY3d 921; *Earley v Murray*, 451 F3d 71; *Matter of State of New York v Blair*, 69 AD3d 15.) III. To the extent that any interpretation of the provisions of Mental Hygiene Law article 10 is required, such provisions should be construed narrowly. (*Blanco v American Tel. & Tel. Co.*, 90 NY2d 757; *Scott v Massachusetts Mut. Life Ins. Co.*, 86 NY2d 429; *Matter of Smith [Great Am. Ins. Co.]*, 29 NY2d 116; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Kansas v Hendricks*, 521 US 346.) IV. Even if, arguendo, Mental Hygiene Law § 10.03 (g) (5) may be read as not requiring present and legal custody, this provision was directed to encompass prior involuntary admissions to an Office of Mental Hygiene facility, and extending it to include voluntary patients such as the respondent would be against public policy. (*State of N.Y. ex rel. Harkavy v Consilvio*, 7 NY3d 607; *State of N.Y. ex rel. Harkavy v Consilvio*, 8 NY3d 645; *Matter of Pilgrim Psychiatric Ctr. [Christian F.]*, 197 AD2d

204; *People ex rel. Joseph II. v Superintendent of Southport Correctional Facility*, 59 AD3d 921, 13 NY3d 704.)

**OPINION OF THE COURT**

SMITH, J.

Article 10 of the Mental Hygiene Law, enacted in 2007, provides that certain imprisoned sex offenders may be transferred to mental hospitals, rather than being released, when their prison terms expire. The statute raises important questions concerning the procedural and substantive rights of the prisoners to whom it applies, but those questions are not before us in this case. We have here the narrower issue of whether the statute applies to a particular class of prisoners: those who were incarcerated for violating the conditions of a term of postrelease supervision (PRS) that was improperly added to their sentences by the Department of Correctional Services (DOCS) without court authorization. We hold that these prisoners are within the coverage of the statute, which we read as applying to offenders actually imprisoned, even if the procedure that led to their imprisonment was flawed.

I

Both of these cases involve men convicted of serious sex crimes—assaults of vulnerable strangers on the street. Joseph II. assaulted a child, Humberto G. a developmentally disabled adult. Both were sentenced to imprisonment. Both were required by statute to be sentenced also to a term of PRS (*see* Penal Law § 70.06 [6]; § 70.45). However, as happened in a number of cases before our decisions in *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358 [2008]) and *People v Sparber* (10 NY3d 457 [2008]), the sentencing court failed to impose the PRS term. DOCS nevertheless included PRS in its record of each man's sentence—a practice we decided in *Garner* was unlawful.

Joseph completed his prison sentence in August 2006, and Humberto completed his in January 2007. Both men began their improperly-imposed PRS terms—not in the community, but in a psychiatric hospital. Mental Hygiene Law article 10 had not then been enacted, but Joseph was involuntarily committed to a hospital under article 9 of the Mental Hygiene Law (Mental Hygiene Law § 9.27), and Humberto committed himself voluntarily, also under article 9 (Mental Hygiene Law § 9.13). Both, while in the hospital, violated the terms of their PRS—Joseph

by trying to escape, Humberto by assaulting a fellow patient— and both were returned to prison.

Article 10, which created a new procedure for the confinement of sex offenders on the expiration of their prison terms, became effective on April 13, 2007. At first the State took no action under the new statute in either Joseph's or Humberto's case, presumably because there seemed no imminent prospect that either would be released. But our April 2008 decision in *Garner* changed that, making clear that the PRS terms that had allowed the State to reincarcerate Joseph and Humberto were unlawful. Correction Law § 601-d and Penal Law § 70.85, enacted in response to *Garner* and *Sparber* and effective June 30, 2008, effectively give prosecutors in such cases a choice either to seek resentencing or to forgo PRS, and in the autumn of 2008 the prosecutors in Joseph's and Humberto's cases chose the latter option. Faced with the prospect that the men would soon be freed, the State began article 10 proceedings, asking that each man be found "a sex offender requiring civil management" and be held in custody past his scheduled release date.

Joseph and Humberto contended that article 10 did not apply to them. They asserted that they were not "detained sex offenders" within the meaning of that article, because their PRS terms, and thus their imprisonment resulting from violations of PRS conditions, were unlawful. Both succeeded below, using different procedural vehicles. Joseph, after his release from custody was stayed under article 10, began a habeas corpus proceeding, which Supreme Court dismissed; the Appellate Division reversed and granted the writ (*People ex rel. Joseph II. v Superintendent of Southport Correctional Facility*, 59 AD3d 921 [3d Dept 2009]). Humberto made a motion to dismiss the article 10 proceeding against him, which Supreme Court granted; the Appellate Division affirmed (*Matter of State of New York v Humberto G.*, 65 AD3d 690 [2d Dept 2009]). We granted leave to appeal in both cases, and we now reverse.

## II

As these cases illustrate, the State's efforts to confine certain sex offenders whose prison terms have expired predate the enactment of Mental Hygiene Law article 10. The State formerly proceeded in a number of cases, as it did in Joseph's, under Mental Hygiene Law article 9, which contains provisions for the involuntary admission to mental hospitals of people who are mentally ill and in need of involuntary care and treatment (*see*

Mental Hygiene Law §§ 9.27, 9.31). We held, however, in *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607 [2006] [*Harkavy I*]) that the State was required to proceed in such cases under Correction Law § 402, a statute applicable to prison inmates believed to be mentally ill, rather than the more general provisions of article 9.

Evidently believing that section 402 procedures were inadequate to protect the public, the Legislature responded to *Harkavy I* by enacting article 10, a statute specifically designed to deal with sex offenders who are completing their prison terms. The statute sets out procedures for determining whether a "detained sex offender" is a "sex offender requiring civil management"—a term defined as "a detained sex offender who suffers from a mental abnormality" (Mental Hygiene Law § 10.03 [q]). A subcategory of "sex offender requiring civil management" is a "dangerous sex offender requiring confinement"—i.e., one whose mental abnormality involves "such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; *see* Mental Hygiene Law §§ 10.05-10.08; § 10.03 [q]). In *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007] [*Harkavy II*]), we decided that, as to the prisoners involved in *Harkavy I*, the new statute had superseded Correction Law § 402 and that future proceedings concerning those prisoners should be held under article 10.

Under article 10, a prisoner can be found to be a "sex offender requiring civil management" (and thus perhaps a "dangerous sex offender requiring confinement") only if he or she is a "detained sex offender" (*see* Mental Hygiene Law § 10.03 [q] [" 'Sex offender requiring civil management' means a detained sex offender who . . ."]). The main issue in these cases is whether Joseph and Humberto were detained sex offenders when the State began proceedings against them under article 10.

Mental Hygiene Law § 10.03 (g) defines "detained sex offender." The part of the definition that is relevant to this case says:

> "(g) 'Detained sex offender' means a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person is . . .

"(5) A person convicted of a sex offense who is, or was at any time after September first, two thousand five, a patient in a hospital operated by the office of mental health, and who was admitted directly to such facility pursuant to article nine of this title or section four hundred two of the correction law upon release or conditional release from a correctional facility . . . ."

■ Joseph and Humberto are clearly persons of the kind described in subsection (5). Both were patients in a hospital operated by the Office of Mental Health after September 1, 2005, and both were admitted to the hospital under Mental Hygiene Law article 9 "directly . . . upon release or conditional release from a correctional facility"—Joseph involuntarily and Humberto voluntarily. Humberto argues that subsection (5) applies only to involuntary patients, but the plain text of the statute contradicts that argument.

On its face, the introductory language of section 10.03 (g) also fits Joseph and Humberto. It is beyond dispute that, when the article 10 proceedings began, they were in fact in DOCS's custody, and DOCS can be an "agency with jurisdiction" (*see* Mental Hygiene Law § 10.03 [a] [" '(a)gency with jurisdiction' . . . can include the department of correctional services"]). Nor can it be doubted that each man was confined "with respect to a sex offense." Joseph and Humberto argue, however, that "custody" must mean lawful custody and that since their confinement was unlawful under *Garner*, the definition of "detained sex offender" cannot apply to them. We reject this argument.

No doubt it is often reasonable to read "custody" as implying "lawful custody." Here, however, the statute is best read as making no distinction between those properly and improperly confined. To see why, it is helpful to remember that article 10, which applies only to "detained" sex offenders, is the result of our decision in *Harkavy I*, which drew a distinction between prison inmates and other people. The sex offenders on whose behalf *Harkavy I* was brought argued that Mental Hygiene Law article 9, which generally governs the commitment of mentally ill people to hospitals, could not be applied to them because they were prisoners, and therefore subject to the more specific provisions of Correction Law § 402 for commitment of "any person undergoing a sentence of imprisonment" (Correction Law § 402 [1]). Accepting that argument, we held that "the Legislature

intended the procedures of Correction Law § 402 to be used to evaluate for commitment *all* imprisoned persons" (7 NY3d at 613 [emphasis added]). The prisoners in *Harkavy I* sought this result, apparently because they preferred section 402 procedures to those used under article 9; we referred in *Harkavy I* to section 402's "attendant procedural requirements including court supervision, pretransfer notice and an opportunity to be heard within a reasonable period of time prior to the inmate's proposed release date" (*id.* at 614).

If Joseph and Humberto had been involved in the *Harkavy I* litigation, they would likely have argued that they were persons "undergoing a sentence of imprisonment" within the meaning of section 402, despite the fact that their "imprisonment" violated the law. And that argument would have been plainly correct. The point of *Harkavy I* was that the Legislature enacted certain procedures specifically designed for the transfer of inmates from prisons to mental hospitals. There is no reason why people whose confinement violated the law should not have been treated the same way as other inmates. And there is no reason to suppose that the Legislature intended to treat them differently when it enacted article 10, which provided a new way of dealing with the prisoners affected by the *Harkavy I* decision.

It is true that the enactment of Mental Hygiene Law article 10 has made special procedures applicable to those in prison less desirable from the prisoners' point of view. Now that the alternative to an article 9 proceeding is an article 10 proceeding, Joseph and Humberto are arguing, in substance, that the State must proceed against them under article 9 if at all—thus seeking to come within the statute that the prisoners in *Harkavy I* sought to escape. This change in the preference of prisoners seems to result, at least in part, from the unattractive prospect of being sent to a "secure" mental health facility—the consequence of being found a "dangerous sex offender requiring confinement" under article 10. But of course it is the Legislature's preference, not the prisoners', that controls. Just as we held in *Harkavy I* that the Legislature intended a distinction between prisoners and other people alleged to be mentally ill, we now conclude that the Legislature intended to draw a similar line between prisoners and non-prisoners when it enacted article 10. The legality of the prisoners' custody is irrelevant in both situations.

There is no injustice in holding prisoners situated as Joseph and Humberto are to be within article 10's scope. The point of

the prisoner/non-prisoner distinction we recognized in *Harkavy I* is not that one group should be treated more or less favorably than the other, but that different situations may call for different procedures. Indeed, there is no apparent reason why the Legislature *had* to limit article 10 to "detained" sex offenders. It could equally well have subjected all people who had committed sex offenses and were thought to be mentally ill—including those living in the community—to the procedures described in article 10. It chose not to do so, perhaps because it thought article 9 procedures adequate to deal with sex offenders who are not detained, or perhaps because it thought that those who are detained present a more serious threat to public safety.

We do not decide here whether there are any valid constitutional objections to article 10. But assuming, as we must for present purposes, that it can be validly applied to lawfully detained prisoners, it can be applied with equal validity to those whose imprisonment resulted from a procedural error. We hold that such prisoners are within the statute's coverage.

## III

Our conclusion that Joseph and Humberto are "detained sex offenders" subject to article 10 disposes of the only issue raised in the *Humberto G.* case. In the *Joseph II.* case, one other issue requires brief attention.

Joseph argues that he was entitled to notice and an opportunity to be heard before the issuance of an order under Mental Hygiene Law § 10.06 (h) staying his release from DOCS's custody. The State argues, and Joseph does not dispute, that this claim is now moot, since Joseph was released after the Appellate Division decision in his favor. Joseph suggests, however, that we should exercise our discretion to decide a moot controversy where the issue presented is significant, likely to recur, and, because it arises in situations of relatively brief duration, apt to evade review (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707 [1980]).

The State does not challenge Joseph's assertion that the issue he raises is significant and likely to recur; it does dispute his claim that it will evade review. Without resolving that dispute, we decline to address the issue here. It is barely alluded to in Joseph's habeas corpus petition; it was not discussed by either court below; and the State, as appellant in this Court, has not briefed or argued the merits of the question. If this issue is one that should be addressed by means of the mootness exception, it can be addressed in some other case.

Accordingly, in *People ex rel. Joseph II. v Superintendent of Southport Correctional Facility et al.*, the order of the Appellate Division should be reversed, without costs, and the petition dismissed. In *Matter of State of New York v Humberto G.*, the order of the Appellate Division should be reversed, without costs, and Humberto G.'s motion to dismiss the article 10 proceeding denied.

CIPARICK, J. (dissenting). Because I believe that a prisoner must be lawfully in custody in order to qualify as a "detained sex offender" as that term is defined in Mental Hygiene Law article 10, I dissent.

A civil management proceeding under article 10 of the Mental Hygiene Law is commenced when an "agency with jurisdiction" notifies the Attorney General and the Commissioner of the Office of Mental Health that a "detained sex offender" is nearing an anticipated release date (Mental Hygiene Law § 10.05 [b]). An "agency with jurisdiction" is an agency "which, during the period in question, would be the agency responsible for supervising or releasing" the "detained sex offender" (Mental Hygiene Law § 10.03 [a]). As relevant here, article 10, which became effective in April 2007, defines the term "detained sex offender" to mean:

"a person who is in the care, custody, control, or supervision of an agency with jurisdiction . . . in that the person is . . .

"[a] person who stands convicted of a sex offense . . . and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense; . . .

"[or a] person convicted of a sex offense who is, or was at any time after September first, two thousand five, a patient in a hospital operated by the office of mental health, and who was admitted directly to such facility pursuant to article nine of this title or section four hundred two of the correction law upon release or conditional release from a correctional facility, provided that the provisions of this article shall not be deemed to shorten or lengthen the time for which such person may be held pursuant to such article or section respectively" (Mental Hygiene Law § 10.03 [g] [1], [5]).

From these legislative pronouncements, the majority draws several conclusions with which I agree. First, I believe the majority correctly concludes that the Legislature limited the scope of article 10 to sex offenders who are actually and presently in the custody or care of the relevant agency with jurisdiction (*see* majority op at 135); I also agree that it is "often reasonable to read 'custody' as implying 'lawful custody' " (*id.* at 133; *see* Mental Hygiene Law § 10.03 [g]). I part company with the majority, however, when it concludes that "[t]he legality of [a] prisoner['s] custody is irrelevant" (majority op at 134) in ascertaining whether he or she is a "detained sex offender."

In *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607 [2006] [*Harkavy I*]), we determined that the proper procedure for involuntary commitment of an inmate was Correction Law § 402 rather than article 9 of the Mental Hygiene Law (*see id.* at 614). We recognized in *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007] [*Harkavy II*]), decided after the legislative enactment of article 10 of the Mental Hygiene Law, that persons similarly situated to the *Harkavy I* petitioners—sex offenders improperly transferred to Office of Mental Health facilities directly from Department of Correctional Services (DOCS) facilities pursuant to article 9—had been specifically designated for inclusion within the new article 10, thus making that new procedure the proper vehicle to involuntarily commit a sex offender nearing the end of his or her prison sentence (*see id.* at 652). We did not contemplate, at that time, whether the DOCS detention was or could be illegal.

The following year, we concluded in *People v Sparber* (10 NY3d 457, 469-470 [2008]) and *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358, 362 [2008]) that a term of postrelease supervision must be judicially pronounced in order to be valid and that it could not be administratively imposed by DOCS. Moreover, recently, we reaffirmed the concept that "the administrative imposition by DOCS of any additional penalty other than that issued by the sentencing court is a nullity" (*People v Williams*, 14 NY3d 198, 218 [2010], citing *Garner*, 10 NY3d at 362; *see also Earley v Murray*, 451 F3d 71, 76 [2d Cir 2006], *reh denied* 462 F3d 147 [2006], *cert denied sub nom. Burhlre v Earley*, 551 US 1159 [2007]).

In both of the cases presently before us, DOCS impermissibly imposed PRS. Accordingly, Joseph II. and Humberto G. were in DOCS custody for violating unlawfully imposed PRS conditions at the time the Attorney General commenced

article 10 proceedings against them.* Yet the majority concludes that the status of the incarceration of both is unimportant. I disagree. An invalid term of PRS and a subsequent violation should not be permitted to serve as the basis for further proceedings under article 10, especially because such proceedings may result in a significant curtailment of liberty (*see generally Kansas v Hendricks*, 521 US 346, 356-357 [1997] [recognizing liberty interest in remaining free from restraint, but upholding a state sex offender civil commitment statute because it complied with due process requirements]).

The majority's argument to the contrary is not convincing. The majority explains that, in *Harkavy I*, we recognized a legislative distinction between imprisoned persons and non-imprisoned persons; it also concludes that "the Legislature intended to draw a similar line between prisoners and non-prisoners when it enacted article 10" (majority op at 134). While that conclusion is accurate, it is irrelevant. Joseph II. and Humberto G.'s administratively imposed PRS terms are a nullity and, thus, their incarceration as a result of a "violation" of an unlawfully imposed term of PRS was likewise illegal. In short, these two prisoners are unlawfully in DOCS custody and thus DOCS may not be considered "an agency with jurisdiction" as contemplated by article 10.

That the majority views the legality of the custody "irrelevant" is troubling; such a result encourages and rewards DOCS errors. For instance, if a DOCS inmate "slips through the cracks" or DOCS "miscalculates" a sentence to extend beyond the actually-imposed sentence, that illegal detention and custody could, under the majority's rationale, serve as the basis for an article 10 proceeding. That result would be untenable. Accordingly, I would hold that neither prisoner qualifies as a "detained sex offender" and, in both cases, would affirm the orders of the Appellate Division.

Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In each case: Order reversed, etc.

---

* As the majority notes, in both cases, the District Attorney declined to seek resentencing pursuant to Correction Law § 601-d to include a term of PRS.