[991 NYS2d 642]

In the Matter of STATE OF NEW YORK, Appellant, v CLAUDE McC., Respondent.

Second Department, August 20, 2014

**APPEARANCES OF COUNSEL**

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu* and *Matthew W. Grieco* of counsel), for appellant.

*Mental Hygiene Legal Service*, Mineola (*Michael D. Neville, Lisa Volpe* and *Dennis B. Feld* of counsel), for respondent.

**OPINION OF THE COURT**

HALL, J.

On this appeal, we consider whether Claude McC. (hereinafter the respondent) was a "detained sex offender," as defined by Mental Hygiene Law § 10.03 (g) (1), at the time the State of New York commenced this proceeding for the civil management of him pursuant to Mental Hygiene Law article 10. Specifically, we address whether the respondent's conviction of a non-sex offense, which he committed while on postrelease supervision for an underlying sex offense, was a "related offense," as that term is defined in Mental Hygiene Law § 10.03 (*l*). For the reasons that follow, we conclude that the respondent was incarcerated on a "related offense" when the State commenced this proceeding and, thus, was a "detained sex offender," subject to civil confinement proceedings, at that time.

Factual and Procedural Background

In November 2005, the respondent pleaded guilty to one count of attempted course of sexual conduct against a child in the first degree (Penal Law §§ 110.00, 130.75 [1] [a]), and was subsequently sentenced on January 5, 2006, to a determinate term of imprisonment of six years, to be followed by a period of five years of postrelease supervision. This conviction arose from acts the respondent committed over a four-year period against his girlfriend's son and daughter, beginning when they were 10 and 11 years old, respectively. On numerous occasions, while their

mother was at work or running errands, the respondent forced his penis into the children's mouths and anuses. In addition, he forced his girlfriend's daughter to perform oral sex on her brother.

On October 21, 2010, after being credited with the 461 days of jail time that he served while awaiting the disposition of the charges against him, the respondent completed serving the maximum period of his determinate term of imprisonment, and was released from prison, becoming subject to the five-year period of postrelease supervision that was part of his sentence. The Attorney General did not commence a proceeding pursuant to Mental Hygiene Law article 10 at that time.

On January 13, 2011, less than three months into his period of postrelease supervision, the respondent was arrested for possessing a stolen credit card. He pleaded guilty to criminal possession of stolen property in the fourth degree, a class E felony (Penal Law § 165.45 [2]). On July 26, 2011, the Supreme Court sentenced the respondent to an indeterminate term of imprisonment of 18 months to 3 years. The term of postrelease supervision imposed in connection with the sex offense was suspended (see Executive Law § 259-i [3] [d]; 9 NYCRR 8004.3 [g] [2]), and held in abeyance until the release of the respondent from imprisonment (see Penal Law § 70.45). The conditional release date applicable to the new term of imprisonment was set for January 10, 2013.*

Pursuant to the requirements of Mental Hygiene Law § 10.05 (b), on December 6, 2012, the New York State Department of Corrections and Community Supervision (hereinafter DOCCS) sent notice to the Commissioner (hereinafter the Commissioner) of the New York State Department of Mental Hygiene (hereinafter the DOMH) and the Attorney General, notifying both that the respondent was a possible "detained sex offender," as defined by Mental Hygiene Law § 10.03 (g), who was nearing an anticipated release from imprisonment that was set for January 10, 2013. On December 12, 2012, DOCCS notified the respondent, in accordance with Mental Hygiene Law § 10.05 (e), that he had been identified as a possible "detained sex offender,"

---

* On January 28, 2014, the Appellate Division, First Department, reversed the judgment convicting the respondent of criminal possession of stolen property in the fourth degree (see People v McC., 113 AD3d 557 [2014]). This Court has denied the respondent's motion to dismiss this appeal, made on the ground that the First Department's determination has rendered this appeal academic (decided herein).

and that his case was referred to a case review team for evaluation in order to determine whether he would be subjected to civil management upon his release from prison.

The case review team arranged for a psychiatric examination of the respondent, which was conducted on December 21, 2012, by a licensed psychologist employed by the DOMH's Office of Mental Health. The examiner prepared a written report, wherein she concluded that the respondent suffers from a "mental abnormality" as defined by Mental Hygiene Law § 10.03 (i). The examiner diagnosed the respondent with pedophilia, cannabis dependence in a controlled environment, and antisocial personality disorder with psychopathy.

The examiner noted in her report that the respondent refused to participate in DOCCS's Sex Offender Treatment Program while in prison, and that he failed to appear for mandatory sex offender treatment while on postrelease supervision. He was also "issued a Tier III [prison disciplinary] ticket for a sex offense in which it was charged that he had on his person a pornographic picture which depicted deviant sexual behavior upon which he had written a note threatening female staff with sadistic sexual abuse."

The examiner scored the respondent a 7 out of 10 on the Static-99R scale, which is an actuarial instrument used to assess the likelihood that the subject would commit another sex offense, and pursuant to which a score of 10 represents the highest likelihood of recidivism. This score placed the respondent in the "[h]igh-risk category."

Based on the results of the examination, on January 8, 2013, the State filed a petition pursuant to Mental Hygiene Law article 10, alleging that the respondent was a "detained sex offender" suffering from a mental abnormality requiring civil management. The respondent moved to dismiss the petition on the ground, inter alia, that he was not a "detained sex offender" within the meaning of Mental Hygiene Law § 10.03 (g) because, at the time the State commenced this proceeding, he was incarcerated for criminal possession of stolen property in the fourth degree, rather than for a sex offense. He asserted that the court lacked subject matter jurisdiction since he would not be nearing his anticipated release from a sex offense-related sentence until 2017.

In an order dated October 7, 2013, the Supreme Court granted the motion and directed the dismissal of the petition. The court found that the respondent's 2011 conviction of criminal posses-

sion of stolen property in the fourth degree was not a "related offense" within the meaning of Mental Hygiene Law § 10.03 (*l*), and, thus, could not serve as a predicate for the Mental Hygiene Law article 10 petition, as the link between that offense and the underlying sex offense was tenuous. In addition, the court noted that there was a clear interruption in the respondent's incarceration between the terms imposed for the underlying sex offense and the non-sex offense.

The State appeals from the order dated October 7, 2013. In a decision and order on motion of this Court dated November 27, 2013, the State's motion to continue to retain custody of the respondent, pending hearing and determination of this appeal, was granted (2013 NY Slip Op 92700[U] [2013]).

Analysis

The Sex Offender Management and Treatment Act (L 2007, ch 7; hereinafter SOMTA)

> "establishes comprehensive reforms to enhance public safety by allowing the State to continue managing sex offenders upon the expiration of their criminal sentences, either by civilly confining the most dangerous recidivistic sex offenders, or by permitting strict and intensive parole supervision of offenders who pose a lesser risk of harm" (Governor's Program Bill Mem No. 8, Bill Jacket, L 2007, ch 7 at 5).

Mental Hygiene Law article 10, the main component of SOMTA, "establishes the standards and procedures governing the civil management of sex offenders" (*id.* at 5). "SOMTA and article 10 are designed to reduce the risks posed by[,] and to address the treatment needs of[,] those sex offenders who suffer from mental abnormalities that predispose them to commit repeated sex crimes" (*Matter of State of New York v Rashid*, 16 NY3d 1, 5 [2010], citing Mental Hygiene Law §§ 10.01, 10.03 [i]).

Mental Hygiene Law article 10 sets forth certain procedures for making a preliminary determination as to whether an individual nearing his or her release date from prison or from community supervision is a sex offender requiring civil management. Specifically, Mental Hygiene Law § 10.05 (b) provides:

> "When it appears to an agency with jurisdiction that a person *who may be a detained sex offender* is nearing an anticipated *release from confinement*, the agency *shall* give notice of that fact to the attorney

general and to the commissioner of mental health. When it appears to [DOCCS] that a person *who may be a detained sex offender* is nearing an anticipated *release from community supervision*, the agency *may* give such notice. The agency with jurisdiction shall seek to give such notice at least one hundred twenty days prior to the person's anticipated release, but failure to give notice within such time period shall not affect the validity of such notice or any subsequent action, including the filing of a sex offender civil management petition" (emphasis added).

"Agency with jurisdiction" is defined in Mental Hygiene Law § 10.03 (a) as the "agency which, during the period in question, would be the agency responsible for supervising or releasing such person, and can include [DOCCS], the office of mental health, and the office for people with developmental disabilities." Furthermore, Mental Hygiene Law § 10.03 (m) defines "release" to mean "release, conditional release or discharge from confinement, from community supervision by [DOCCS], or from an order of observation, commitment, recommitment or retention." Insofar as relevant here, Mental Hygiene Law § 10.03 (g) (1) defines "detained sex offender" to include a person

"who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person . . . 'stands convicted of a sex offense as defined in subdivision (p) of this section, and is currently serving a sentence for, or subject to supervision by [DOCCS], whether on parole or on post-release supervision, for such offense or for a related offense.'

" 'Related offenses' include any offenses that are prosecuted as part of the same criminal action or proceeding, or which are part of the same criminal transaction, *or which are the bases of the orders of commitment received by the department of correctional services in connection with an inmate's current term of incarceration*" (Mental Hygiene Law § 10.03 [*l*] [emphasis added]).

Once the Commissioner receives notice of the individual's anticipated release, he or she is authorized to conduct "a preliminary review" of whether "the person who is the subject of

the notice" should be referred for evaluation by a "case review team" (Mental Hygiene Law § 10.05 [d]). If the Commissioner decides to make the referral, he or she must provide notice to the respondent (*see* Mental Hygiene Law § 10.05 [e]).

> "The case review team [then] considers a variety of records, may arrange for a psychiatric examination, and ultimately determines whether the respondent is a 'sex offender requiring civil management'—i.e., is both 'detained' within the meaning of section 10.03 (g) and suffers from a 'mental abnormality' as defined by section 10.03 (i)" (*Matter of State of New York v Rashid*, 16 NY3d at 7, citing Mental Hygiene Law § 10.03 [q]).

"If the case review team determines that the respondent is not a sex offender requiring civil management, it shall so notify the respondent and the attorney general, and the attorney general shall not file a sex offender civil management petition" (Mental Hygiene Law § 10.05 [f]). If the determination is made that the respondent is a sex offender requiring civil management, the case review team must notify the respondent and the Attorney General in writing within 45 days of the Commissioner's receipt of the notice of anticipated release (*see* Mental Hygiene Law § 10.05 [g]).

After receiving notice of the case review team's determination, the Attorney General may file a sex offender civil management petition (*see* Mental Hygiene Law § 10.06 [a]; *People v Harnett*, 16 NY3d 200, 204 [2011]). Mental Hygiene Law article 10 requires "the Attorney General to file a sex offender civil management petition while a respondent is in State custody or, if the respondent is not confined, still subject to State supervision" (*Matter of State of New York v Rashid*, 16 NY3d at 16-17). "Article 10 was not designed to cover such individuals once they pass beyond the purview of the criminal justice system" (*id.* at 17).

Here, the State contends that the respondent was a "detained sex offender" at the time the petition was filed on January 8, 2013, because he was incarcerated on a "related offense," i.e., criminal possession of stolen property in the fourth degree. Specifically, the State argues that the stolen property offense falls within the definition of a related offense because it formed a basis "of the orders of commitment received by [DOCCS] in connection with [the respondent's] current term of incarceration" (Mental Hygiene Law § 10.03 [*l*]). The respondent

counters that the criminal possession of stolen property offense is not a related offense because the order of commitment with respect thereto makes no mention of the underlying sex offense.

Upon our review of the pertinent statutory language and the relevant case law, and in light of the legislative purpose of SOMTA, we agree with the State that the respondent was in the custody of DOCCS with respect to a related offense when the instant Mental Hygiene Law article 10 petition was filed.

The respondent's 2011 conviction of criminal possession of stolen property in the fourth degree clearly does not fall within the first two categories of a "related offense," i.e., offenses which are prosecuted as part of the same criminal action or proceeding as the sex offense, and offenses which are part of the same criminal transaction as the sex offense (*see* Mental Hygiene Law § 10.03 [*l*]). However, the crime of criminal possession of stolen property does fall within the third category, which covers offenses "which are the bases of the orders of commitment received by [DOCCS] in connection with an inmate's current term of incarceration" (Mental Hygiene Law § 10.03 [*l*]). This category covers "inmates" serving their "current term[s] of incarceration" (*Matter of State of New York v Rashid*, 16 NY3d at 18; *see* Mental Hygiene Law § 10.03 [*l*]). The Court of Appeals has recognized that this third category of "[r]elated offenses" is "broadly worded, reflecting the Legislature's apparent decision to give the State more leeway to pursue civil commitment against soon-to-be-released [DOCCS] inmates than parolees" (*Matter of State of New York v Rashid*, 16 NY3d at 18 n 12).

When the State initiated this civil management proceeding, the respondent was in the custody of DOCCS, and still subject to the sex offense order of commitment, inasmuch as he had not yet completed the postrelease supervision portion of that sentence. In other words, he was incarcerated on a "related offense," because he was convicted of that offense while still serving his sentence for the underlying sex offense. In opposition to the respondent's motion, the State demonstrated that, when the respondent was returned to prison upon his conviction of criminal possession of stolen property in the fourth degree, DOCCS "received" the orders of commitment for both that conviction and the underlying sex offense conviction, and recalculated the sentences accordingly. In recalculating the sentences, DOCCS was required to give effect to the sex offense order of commitment by adding the undischarged portion of the

postrelease supervision term to the end of the prison term for the non-sex offense. By virtue of this required approach, the order of commitment for the sex offense retained a connection to the respondent's current term of incarceration for the non-sex offense. Indeed, the statutory definition of "[r]elated offenses" contemplates that multiple orders of commitment may be received by DOCCS in connection with an inmate's current term of incarceration, inasmuch as the statute uses the plural, i.e., "orders of commitment received by [DOCCS]" (Mental Hygiene Law § 10.03 [*l*]).

In *Matter of State of New York v Robert F.* (101 AD3d 1133 [2012]), this Court affirmed the denial of the respondent Robert F.'s pretrial motion to dismiss the State's petition pursuant to Mental Hygiene Law article 10. Robert F. contended that he was not a "detained sex offender," as defined by Mental Hygiene Law § 10.03 (g), because at the time the State commenced the proceeding, he was incarcerated for his conviction of attempted promoting prison contraband in the first degree, rather than for a sex offense. This Court rejected that contention, noting that Robert F. was convicted of attempted promoting prison contraband in the first degree, and sentenced thereon, while still incarcerated upon his underlying sex offense conviction, and there was no interruption in his incarceration between the terms imposed for his underlying sex offense conviction and the conviction of promoting prison contraband in the first degree (*see id.* at 1136).

Here, in contrast to *Robert F.*, there was a clear interruption in the respondent's incarceration between the terms imposed for his underlying sex offense conviction and the non-sex offense conviction. However, this distinction does not lead to a contrary result. Indeed, the respondent in *Robert F.* had finished serving his sentence on the sex offense at the time the Mental Hygiene Law article 10 proceeding was commenced. Here, the respondent has not yet completed the postrelease supervision component of his underlying sex offense, and was still subject to the order of commitment in connection with the sex offense when this proceeding was commenced. That the respondent committed the non-sex offense while on postrelease supervision, as opposed to while incarcerated on the sex offense, is a distinction without a difference and does not take the non-sex offense outside the definition of a "related offense."

Reading the statute as prohibiting evaluation of the respondent's need for civil management upon his release from pris-

on—while he is still subject to the sex offense sentence—is inconsistent with the objectives of Mental Hygiene Law article 10, which was enacted in response to the "compelling need . . . to protect residents of this state from sex criminals whose recidivism is predictable and uncontrollable" (Governor's Program Bill Mem No. 8, Bill Jacket, L 2007, ch 7 at 10; *see Matter of New York State Assn. of Criminal Defense Lawyers v Kaye*, 96 NY2d 512, 519 [2001]).

Had the respondent violated the terms of his postrelease supervision by virtue of conduct that did not constitute a felony, he would have been subject to further incarceration (*see* Penal Law § 70.45 [1]; Executive Law § 259-i [3] [f] [x] [D]). It stands to reason that if he were re-incarcerated as a result of such a violation, he could still be subject to proceedings pursuant to Mental Hygiene Law article 10. However, under the Supreme Court's reading of the statute, a sex offender is not subject to proceedings under Mental Hygiene Law article 10 when the period of postrelease supervision is held in abeyance pending the sex offender's imprisonment for a more egregious violation of the terms of his or her postrelease supervision, i.e., a violation constituting a felony that is not a sex offense. This is not a reasonable result (*see People v Garson*, 6 NY3d 604, 614 [2006]; *People v Kramer*, 92 NY2d 529, 539 [1998]).

The Supreme Court's reading of the statute also serves to delay the time a sex offender has before he or she is evaluated for civil management under Mental Hygiene Law article 10, inasmuch as the date of the sex offender's "anticipated release" from postrelease supervision is extended (Mental Hygiene Law § 10.05 [b]). In this case, such a construction would have extended the date of the respondent's anticipated release from postrelease supervision from 2015 to 2017. This result is also counter to the purpose of the statute. For the foregoing reasons, as of the date this proceeding was commenced, the respondent was a "detained sex offender" nearing an anticipated release from confinement.

In so holding, we are mindful "that Penal Law § 70.30 may not be used to aggregate terms of imprisonment in order to make 'detained sex offender' determinations pursuant to [Mental Hygiene Law] article 10" (*Matter of State of New York v Robert F.*, 101 AD3d at 1135; *see Matter of State of New York v Rashid*, 16 NY3d at 18-19). However, in this case, it is not necessary to aggregate terms of imprisonment pursuant to the Penal Law in order to make such a determination, since the re-

spondent was incarcerated for a "related offense" (Mental Hygiene Law § 10.03 [*l*]) at the time this proceeding was commenced by virtue of the fact that he was in the custody of DOCCS and still subject to the order of commitment referable to his conviction of a sex offense.

Accordingly, the Supreme Court should have denied the respondent's motion to dismiss the petition. Therefore, the order is reversed, on the law, the respondent's motion to dismiss the petition is denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the petition consistent herewith.

DICKERSON, J.P., LEVENTHAL and LOTT, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, Claude McC.'s motion to dismiss the petition is denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings on the petition consistent herewith.

———

Motion by the respondent on an appeal from an order of the Supreme Court, Kings County, dated October 7, 2013, to dismiss the appeal on the ground that it has been rendered academic.

Upon the papers filed in support of the motion and papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the motion is denied (*see People ex rel. Joseph II. v Superintendent of Southport Correctional Facility*, 15 NY3d 126 [2010]).