Matter of State of New York v David D. (2022 NY Slip Op 03877)

Matter of State of New York v David D.

2022 NY Slip Op 03877

Decided on June 14, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 14, 2022

Before: Webber, J.P., Singh, González, Kennedy, Higgitt, JJ. 

Index No. 250243/17 Appeal No. 15667-15667A Case No. 2021-04242 

[*1]In the Matter of the State of New York, Petitioner-Respondent,
v
David D., Respondent-Appellant.

Marvin Bernstein, Mental Hygiene Legal Service (Diane Goldstein Temkin of counsel), for appellant.
Letitia James, Attorney General, New York (Stephen J. Yanni of counsel), for respondent.

Order, Supreme Court, Bronx County (Michael A. Gross, J.), entered on or about March 18, 2021, which, upon a jury finding of mental abnormality within the meaning of Mental Hygiene Law § 10.03(i), and a determination made after a dispositional hearing that respondent is a dangerous sex offender requiring confinement, committed respondent to a secure treatment facility, unanimously affirmed, without costs. Appeal from the order, same court and Justice, entered on or about July 6, 2017, which denied respondent's motion to dismiss the petition, unanimously dismissed, without costs, as superseded by the appeal from the order of commitment.
The court properly denied respondent's pretrial motion to dismiss, as he was a "detained sex offender" when this proceeding was commenced (see Mental Hygiene Law §§ 10.03 [g] [1] ["A person who stands convicted of a sex offense . . . and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense"]; 10.03 [l]; 10.07 [a]). When the Sex Offender Management and Treatment Act (SOMTA) petition was filed, respondent was serving a prison sentence for crimes he committed in 2000. When he was arrested for those offenses, he was on parole in connection with a 1980 case, in which he had been convicted of a qualifying sex offense for purposes of SOMTA (Mental Hygiene Law § 10.03[p]) and was, thus, still serving that sentence. Due to the parole violation, he was incarcerated and completed his prison sentence in the 1980 case, which followed without interruption by the prison sentence imposed in the 2000 case (see Matter of State of New York v Claude McC., 122 AD3d 65 [2d Dept 2014], lv dismissed 24 NY3d 1030 [2014]; Matter of State of New York v Robert F., 101 AD3d 1133, 1135-1136 [2d Dept 2012]).
The State proved by clear and convincing evidence that respondent has a mental abnormality as defined by Mental Hygiene Law § 10.03(i), and that he is a dangerous sex offender requiring confinement, rather than a "dangerous but typical recidivist convicted in an ordinary criminal case" (Kansas v Crane, 534 US 407, 413 [2002]; see also Matter of State of New York v Frank P., 126 AD3d 150, 151-152 [1st Dept 2015]).
Dr. Stuart Kirschner, a forensic psychologist, testified on behalf of the State at trial and at the dispositional hearing. As respondent refused to be interviewed or examined by Dr. Kirschner, Kirschner based his findings and conclusions on a review of respondent's police, court, prison, and mental health records. Kirschner also reviewed and addressed respondent's "biographical information . . . regarding his life during childhood," and psychiatric, educational, and vocational history.
Preliminarily, Kirschner described the SOMTA-qualifying offense as follows: In 1980, respondent followed a 14-year-old girl who was delivering newspapers into a building, took her to the roof, made her undress, bit her [*2]breast, forced her to fellate him, and inserted his hand and penis into her anus. He then "slit her throat from ear to ear," stabbed her in the chest, and fled without offering her any assistance. The victim required multiple surgeries and suffered difficulty breathing and "permanent injury to her trachea." Respondent was convicted of attempted murder, rape, and sodomy, and received an aggregate prison sentence of 12½ to 25 years.
Kirschner also addressed respondent's extensive criminal record, which included multiple crimes committed against females. He testified that according to the records he reviewed, in 1967, respondent "unlawfully detained a female in Kentucky" and that "back in the 70's" respondent returned to the building where he was previously employed as a doorman and assaulted a housekeeper who "needed assistance from a porter." With respect to this latter incident, according to Kirschner, respondent entered the apartment where the housekeeper was located, "demanded money from her," "dragged her into the bedroom," and "punched her in the face, caus[ing] her face to bleed." Respondent's assault "was interrupted" when two porters arrived and respondent fled.
Kirschner testified that in 1997, three days after being released on parole, respondent was seen leaving a building while holding hands with his 12-year-old niece. Respondent was reincarcerated for violating a condition of parole, prohibiting him from being alone with a minor.
Kirshner also testified that in 2000, after being released on parole again, while in the apartment of an acquaintance's 41-year-old wife, respondent told her, "[Y]ou don't pay any attention to me anymore." He stole $1,000 from a slot machine located in her apartment, stabbed her in the abdomen, and fled to Atlantic City. The knife handle broke off, leaving the blade of the knife stuck in the woman's abdomen. Respondent's criminal records indicate that he was convicted of burglary and assault and sentenced to 19 years in prison.
During his testimony, Kirschner noted that respondent failed to take "responsibility" for his crimes, express empathy for the victims, and exhibited a "callous lack of remorse." In particular, in 2018, respondent denied committing the 1980 offenses. While he admitted to stabbing the victim in the 2000 incident, he asserted that he did not think she was "badly" hurt. Respondent also referred to one of his victims as "illegal."
According to Kirschner, respondent failed to participate in sex offender treatment in prison or when required as a condition of parole. While confined in a New York State Office of Mental Health facility during the pendency of this proceeding, respondent began sex offender treatment, but made "minimal . . . or no progress." The records reflected that respondent failed to attend some sessions, and when he did, he would apparently ignore the discussions, refuse to contribute to a written treatment plan or relapse prevention plan. Respondent also stated [*3]that he did not see himself as a sex offender. Further, Kirschner noted that respondent "target[ed] females" and opined that while he was "relatively well-behaved" in prison, respondent's behavior while constantly supervised in a men's prison and not exposed to triggers for offending, was not predictive of his likelihood of targeting women or girls once released.
In addition to reviewing respondent's records, Kirschner also reviewed a number of assessment instruments, including the Psychopathy Checklist Revised (PCL-R), and administered the Sexual Violent Risk-20 (SVR-20), upon which respondent scored highly. He explained that individuals who score high on the PCL-R will reoffend, and in combination with a high score on other sex offense risk assessments, such as the SVR-20, is a "good indication [that] the person is a high risk [of] not only offending, but sexually reoffending."
Based on the totality of the information provided, Kirschner diagnosed respondent with antisocial personality disorder (ASPD), psychopathy, narcissistic personality disorder, a neurodevelopmental disorder (unspecified), and alcohol use disorder which was in remission while confined. Those conditions other than psychopathy are recognized in the American Psychiatric Association's 2013 Diagnostic and Statistical Manual of Mental Disorders (DSM-5).
He concluded that respondent suffers from a mental abnormality, which "make[s] him predisposed to engage in sex offender behaviors" and "causes him serious difficulty to control such conduct." Kirshner explained that "impulsivity" is one of the criteria for ASPD and psychopathy, and that respondent's "life-long problems with impulsivity" cause him to have "a severe inability to control." Kirschner stated that respondent "doesn't see himself as being a sex offender," "doesn't see anything wrong with himself," and that "his current thinking is no different from what it was way back in the 1970s." Kirschner inferred that respondent's "cognitive distortions" "make[] his past behaviors current." According to Kirschner, respondent is "predisposed to not only committing sexual offenses, but predisposed to committing various types of offenses" and poses an "[e]xtremely high risk for sexually re-offending."
Respondent presented no witnesses at trial. The jury unanimously found that respondent suffers from a mental abnormality under Mental Hygiene Law article 10.
Under article 10 of the Mental Hygiene Law, the State must establish at trial, by clear and convincing evidence, that a detained sex offender suffers from a mental abnormality as defined in that statute (Mental Hygiene Law §§ 10.03 [e]; 10.07 [d]; see also Matter of State of NY v Floyd Y., 22 NY3d 95, 99 [2013]).
A verdict following a SOMTA trial is "legally insufficient when 'there is no valid line of reasoning and permissible inferences that could possibly lead a rational person to the conclusion reached by the jury'" (Matter of State of New York v Floyd Y., 135 [*4]AD3d 70, 72 [1st Dept 2015], affd 30 NY3d 963 [2017]). The evidence must be "considered in the light most favorable to the State" (Matter of State of New York v Dennis K., 27 NY3d 718, 726 [2016], cert denied __ US __, 137 S Ct 579 [2016]). Moreover, where a State expert diagnoses an article 10 respondent with multiple mental disorders, a reviewing court does not view each "in isolation" (id. at 750). Rather, the court assesses whether and "how those disorders, in combination, predisposed respondent to the commission of conduct constituting sex offenses" (id. at 751-752).
Here, the evidence supports the finding that respondent has more than one "condition, disease or disorder" that, together, predispose him to commit sex offenses and which will result in his having serious difficulty in controlling such conduct (Mental Hygiene Law § 10.03 [i]; see also e.g. Dennis K., 27 NY3d at 751-752).
Contrary to respondent's contentions, and as fully set forth above, Kirschner did link respondent's diagnoses to his predisposition to commit sex crimes and his inability to control his sex-offending behavior. As noted, Kirschner explained how respondent's diagnoses contribute to his "life-long problems with impulsivity," cause him to have "a severe inability to control," and predispose him to an "[e]xtremely high risk for sexually re-offending."
Moreover, as Supreme Court highlighted, respondent appears to not have a realistic strategy to avoid reoffending. Respondent's participation in sex offender treatment programs over the course of 40 years has been inconsistent, with periods of refusals to participate in such programs. Although respondent very recently entered into such a program, he has just started the process of reducing his risk. As stated above, respondent refused to be interviewed or examined by Kirschner, which would have been helpful in the overall evaluation.
As Kirschner concluded, it is the totality of respondent's mental abnormalities, coupled with his history of substance abuse, impulsivity, lack of remorse or acceptance of his crimes, scores on the risk assessment instruments administered, and lack of sex offender treatment, that evinces respondent's predisposition to commit sex offenses without the ability to control his sex offending conduct. Accordingly, we find that the evidence upon which the jury made its determination was legally sufficient to support the verdict, since there was a valid line of reasoning by which it could conclude that respondent suffered from a mental abnormality based on the evidence presented at trial. We also find that clear and convincing evidence supports the finding that the mental abnormalities from which respondent suffers involve such a strong predisposition to commit sex offenses and such an inability to control his behavior that he is likely to be a danger to others and to commit sex offenses if he is not confined to a secure treatment facility (see Mental Hygiene Law § 10.07 [f]).
The cases relied [*5]upon by respondent are inapposite. While they provide guidance, they are distinguishable and are not, factually, a suitable comparison (see Matter of State v Donald DD., 24 NY3d 174 [2014]; Frank P., 126 AD3d 150). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 14, 2022